**George A. GLASS and Nona Glass, Plaintiffs-Appellants,**

v.

**Ron PFEFFER, Walt Mosby, Joe Iarossi, Robert Robinson, Ray Vines, Jim Weckwerth, James Gilchrist, and Dean Forester, Defendants-Appellees.**

**No. 80–1304.**

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 12, 1980.

Decided Aug. 3, 1981.

Fred W. Phelps, Jr., Topeka, Kan., for plaintiffs-appellants.

Douglas S. Wright, Deputy City Atty., Topeka, Kan., for defendants-appellees Ron Pfeffer, Joe Iarossi and Robert Robinson.

Frederick K. Starrett of Fisher, Ochs & Heck, Topeka, Kan., for defendant-appellee Jim Weckwerth.

Wilburn Dillon, Jr., Topeka, Kan., for defendants-appellees Walt Mosby and Ray Vines.

William E. Enright of Ireland & Enright, Topeka, Kan., for defendant-appellee Dean Forester.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

George A. Glass, Jr., and Nona Glass seek review of both the summary judgment dismissing their suit against Topeka police officers and a later order by the district court assessing attorneys' fees against plaintiffs and their counsel, Fred W. Phelps, Jr., and denying plaintiffs' request for attorneys' fees. On appeal we must determine whether this Court has jurisdiction to review the merits of the summary judgment and, if so, whether plaintiffs were entitled to reach the jury on their complaints of discriminatory treatment. We must also consider whether the district court erred in its assessment of attorneys' fees.

This suit was precipitated by the mistaken arrest of George Glass on March 6, 1976, in the home of his mother, Nona Glass, by officers of the Topeka police force who were investigating a homicide. Plaintiffs' complaint in federal district court alleged violations of their civil rights under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986. The district court found (1) plaintiffs' section 1986 claim was barred by the statute of limitations, (2) plaintiffs' section 1983 claim was barred by the doctrine of immunity which protects police officers who act mistakenly but with probable cause and in good faith, and (3) concerning the sections 1981 and 1985(3) claims, the record conclusively showed plaintiffs were not discriminated against on the basis of race and no conspiracy was entertained against them.

The court's summary judgment order on the merits of the case was entered May 2, 1979, and no appeal was sought by plaintiffs until March 11, 1980. However, between June 12 and June 21, 1979, four of the eight defendants requested attorneys' fees in postjudgment motions. The Glasses responded to these motions on June 21, 1979, and also requested attorneys' fees. In an order entered January 25, 1980, the district court denied plaintiffs' request for attorneys' fees and allowed some of the attorneys' fees sought by defendants while denying others. On February 26, 1980, the court finalized this order and denied plaintiffs' motion to amend the January 25 order.

I

In their notice of appeal, filed March 11, 1980, the Glasses seek review not only of the February 26 order, but also of all prior rulings of the court, including the summary judgment on the merits of the case entered May 2, 1979. They argue that there was no final order in this case until February 26, 1980. Defendants' motions to dismiss the portion of the appeal relating to issues treated in the May 2 order were reserved for disposition in this opinion.

■ Fed.R.App.P. 4(a) provides that in cases involving an appeal by right from a district court order, the notice of appeal "shall be filed ... within 30 days after the date of entry of the judgment or order appealed from." Compliance with the filing requirement is mandatory and jurisdictional for an appeal of a final judgment. *Browder v. Director Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978).

■ A judgment is final and appealable when the court enters a decision which ends the litigation leaving nothing to be done except execution of judgment, *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945), and informs the losing party of the extent of the remedy afforded against it. *See Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Gurule v. Wilson*, 635 F.2d 782 (10th Cir. 1980).

The issue of defendants' entitlement to attorneys' fees was not specifically treated

in the May 2 order. Yet the issue had been raised prior to judgment; in each defendant's answer to the complaint a request was made that attorneys' fees be awarded as part of defendant's costs or under 42 U.S.C. § 1988. In *Gurule v. Wilson*, 635 F.2d 782 (10th Cir. 1981), the trial court granted relief to plaintiffs but failed to address the request for attorneys' fees made in plaintiffs' complaint. Plaintiffs did not submit a formal application for attorneys' fees until 2½ months after judgment on the merits. We held that the court's judgment on the merits was not final for purposes of appeal until the attorneys' fees issue had been addressed and decided. Only then did defendant know the extent of the remedy afforded against it, attorneys' fees being part of the remedy normally awarded to prevailing plaintiffs in civil rights actions.

We find no basis for different treatment in the instant case, in which the defendants prevailed. To be sure, to collect attorneys' fees against a plaintiff the defendant must not only prevail on the merits but show plaintiff pursued the litigation in bad faith or brought a frivolous, unreasonable, or groundless action. *EEOC v. Fruehauf Corp.*, 609 F.2d 434, 436 (10th Cir. 1979). In both situations, the issue of attorneys' fees is closely intertwined with the merits of the case and should be reviewed in the same appeal. There should not be any difference so far as appeal time is concerned between the treatment of plaintiffs and defendants. Consistent with our earlier opinion in *Gurule*, we hold that if the issue of entitlement to attorneys' fees has not been raised by a prevailing party—plaintiff or defendant—before judgment on the merits, such application must be made within the ten-day period required by Fed. R.Civ.P. 59(e) for alteration or amendment of a judgment. Thus we join *White v. New Hampshire Department of Employment Security*, 629 F.2d 697 (1st Cir. 1980), and reject the positions of *Obin v. District No. 9, International Association of Machinists and Aerospace Workers*, 651 F.2d 574 (8th Cir. 1981), and *Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980), as to the timing of such requests.

In the cases in which the issue of entitlement to attorneys' fees has been raised by the ultimately prevailing party, whether in the original complaint, by answer, or by motion before final judgment on the merits or within ten days thereafter, there is no appealable final order until this issue is decided or abandoned. A request for such fees may be abandoned by an in-court declaration on the record or by a disclaimer filed with the court. The court, acting sua sponte, or either party, by appropriate pleading, may bring the issue to a head and thereby secure a final order that is immediately appealable. In the instant case, since the issue was raised by defendants in their answers and was not resolved by the May 2 judgment, that order was not a final order appealable under 28 U.S.C. § 1291. It became final on February 26, 1980; hence the appeal by plaintiffs, filed within thirty days of the court's second order, was timely as to all issues.

## II

On the merits, aside from the attorneys' fees issues, plaintiffs' brief addresses only the section 1983 claim.[1] They argue that it is the province of the jury to draw inferences as to the "good faith" of the defendant police officers, and that in granting summary judgment the trial judge improperly made the credibility determinations. This is not a case like *Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979), in which the trial court made its decision before discovery. Here, apparently discovery was complete and the depositions of all potential witnesses had been taken. The trial judge concluded that there was no evidence in all these materials justifying any inference other than an honest mistake

---

1. The one-year statute of limitation obviously had run on the section 1986 claim since the alleged injury occurred March 6, 1976, and suit was not filed until December 27, 1977. It seems equally clear that plaintiffs can prove no race-based discriminatory treatment under section 1981 or conspiracy under section 1985(3).

by police officers in hot pursuit of a murderer. After careful review of the entire record, we agree.

The record compels the conclusion the arrest of Glass was a case of reasonable mistaken identity in the confusion of the chase. The police had probable cause, from eyewitness testimony, to arrest Henry White, a black man later found in a house adjacent to the one in which plaintiff George Glass was arrested. The eyewitness, looking away from the houses and attempting to hide her gestures, pointed to the wrong house. "When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971). In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the wrong person was imprisoned for three days in a case of mistaken identity, which allegedly could have been avoided by due care in establishing identification procedures. The Supreme Court noted that the actions of officials making the error might constitute a tort punishable in state court, but held they did not constitute a violation of section 1983. *See also Major v. Benton*, 647 F.2d 110 (10th Cir. 1981). The instant case is similar to *Baker v. McCollan*. Immediately upon discovery of the mistake and within a few minutes of the arrest, Glass was released. The court justifiably found plaintiffs had not met their burden of establishing the existence of a genuine issue of material fact which could result in a successful section 1983 claim. Summary judgment was therefore properly granted. *Stevens v. Barnard*, 512 F.2d 876, 878 (10th Cir. 1975).

### III

We consider next the Glasses' challenges to the court's assessment of attorneys' fees. They challenge (1) the court's assessment of attorneys' fees against plaintiffs under 42 U.S.C. § 1988, (2) the court's denial of plaintiffs' request for attorneys' fees; and (3) the court's award of attorneys' fees against plaintiffs' counsel based on 28 U.S.C. § 1927.

The district court awarded defendant Forester attorneys' fees incurred from the time his deposition was taken by plaintiffs because after his deposition "there was absolutely no excuse for plaintiffs' failure to voluntarily dismiss Forester." [R. Vol. I, 288.] Voicing a cautious approach to avoid deterring the filing of meritorious civil rights actions, the district court awarded no attorneys' fees to the other defendants who sought them, except for fees incurred in responding to plaintiffs' motion for attorneys' fees.

With regard to an award of attorneys' fees against a party, 42 U.S.C. § 1988 provides in pertinent part that "in any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court held that, in awarding attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k), courts should grant attorneys' fees to a prevailing defendant only upon a finding that the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *See Lujan v. State of New Mexico Health & Social Services Dep't*, 624 F.2d 968, 971 (10th Cir. 1980). The reasoning and standard of *Christiansburg* apply equally to the identical provision contained in section 1988. S.Rep. No. 1011, 94th Cong., 2d Sess. 1, 2–4, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5910–12.

The trial court utilized the proper test in awarding attorneys' fees to defendant Forester and allowing the other applying defendants to recover costs incurred in responding to plaintiffs' frivolous request for attorneys' fees. The court found that Forester was "needlessly" and "harassingly" included in the suit. [R. Vol. I, 290.] Expressing its reluctance to award attorneys' fees against unsuccessful plaintiffs in civil

rights cases, the court held plaintiffs' motion for attorneys' fees as the "prevailing party" when complete summary judgment had been granted against them was "incredible," "ridiculous" [R. Vol. I, 289] and "baseless." [R. Vol. I, 325.]

■ After a review of the record we are satisfied that these determinations by the district court were not an abuse of discretion and were proper on the facts. *See Smith v. Josten's American Yearbook Co.,* 624 F.2d 125, 127 (10th Cir. 1980). Defendant Forester was not involved in the incident giving rise to this arrest. Plaintiffs' claims of a conspiracy involving Forester are clearly without basis in fact. Plaintiffs' claim to attorneys' fees as a "prevailing party" within the meaning of section 1988 was baseless and frivolous; the summary judgment resolved every issue against them.[2]

■ In addition to placing the burden of these costs on plaintiffs, the court assessed them against their counsel, Fred W. Phelps, Jr., as well, finding that counsel's conduct had been vexatious and unreasonable and had extended proceedings and, thus, increased the costs of the proceedings. [R. Vol. I, 289 with reference to criteria at 285.] The court based this holding on 28 U.S.C. § 1927,[3] which allows a court to assess counsel personally for excess costs. However, the Supreme Court has expressly held that the version of section 1927 in effect at the

time of this case does not contemplate attorneys' fees as part of such costs.[4] *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 757–62, 100 S.Ct. 2455, 2459–62, 65 L.Ed.2d 488 (1980). Therefore, the assessment of attorneys' fees against plaintiffs' counsel may not be based upon that statute.

In *Roadway* the Supreme Court recognized the *inherent* power of a court to assess attorneys' fees against counsel upon a finding that counsel has willfully abused the judicial process. But the Court noted that this inherent power should be exercised only after the attorney has been given notice and an opportunity for a hearing.

> "The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers."

447 U.S. at 766–67, 100 S.Ct. at 2464 (footnotes and citation omitted).

■ The precise question for resolution here is whether the court's assessment of fees against Phelps was a proper exercise of the inherent power recognized in *Roadway.*[5]

---

2. Plaintiffs' argument they are prevailing parties under 42 U.S.C. § 1988 is that this suit "obtained the attention of the Topeka Police Dep't" and that "each of the officers involved have hopefully learned a valuable lesson as to how to approach situations in the future when potential innocent bystanders are involved." [R. Vol. I, 257].

3. The applicable version of 28 U.S.C. § 1927 reads in full:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."

4. The statute has since been amended to expressly permit award of attorneys' fees.

5. We note that in denying plaintiffs' request for a stay to await the Supreme Court's decision in *Roadway* the district court asserted that local rules provide an alternative basis for its holding. Rules 4 and 4A of the Rules of Practice of the District Court for the District of Kansas empower the district court to sanction attorney misconduct. While these rules arguably require a less rigorous showing than the abuse of process standard set forth in *Roadway,* they afford the same basic notice and hearing safeguards required by that case. We do not reach the question whether the local rules provide a separate legal basis for disciplining attorneys when less than bad faith or abuse of process is found.

The court also made reference to Kansas' Rule 15(d) in connection with the assessment. We construe that rule as applicable only to parties, as we believe the trial judge did also, *see* R. Vol. I, 289, and referencing "costs" only,

Although it is apparent from the orders in this case that the district court found the conduct of plaintiffs' counsel constituted bad faith and abuse of process,[6] the safeguards of notice and opportunity for a hearing were not afforded counsel before the assessment was made against him. We therefore must reverse the order of the district court insofar as it assessed attorneys' fees against attorney Fred Phelps, Jr., personally.

With the exception of the award of attorneys' fees against plaintiffs' counsel, all holdings of the district court are affirmed. The action is remanded to the district court for further proceedings consistent with this opinion. On remand the trial court may

assess attorneys' fees against plaintiffs' counsel personally, if it gives him the requisite notice and hearing and finds the requirements set forth in *Roadway* are met in this case. Each party is to bear his own expenses and fees incurred by reasons of this appeal, except for appellee Forester whose costs and attorneys' fees shall be borne by plaintiffs.

---

not including attorneys' fees, and perhaps as being limited by Rule 15(e) to discovery and production of documents.

**6.** In its order of January 25, 1980, the district court premised its holding of liability under section 1927 on its finding that Phelps' conduct

had been unreasonable and vexatious. The court construed these terms to require "a serious and studied disregard for the orderly process of justice." It also indicated that this standard is more stringent than a "mere 'bad faith' standard." [R. Vol. I, 285.]