EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff-Appellee,

and

Hugh Stone III,
Plaintiff-Intervenor-Appellee,

v.

Preston G. GADDIS, Individually and
d/b/a Morning American,
Defendant-Appellant.

No. 82–1959.

United States Court of Appeals,
Tenth Circuit.

May 2, 1984.

En Banc Order May 8, 1984.

Richard L. Barnes of Nichols & Wolfe, Inc., Tulsa, Okl., for defendant-appellant.

Irene Hill, Atty., E.E.O.C., Washington, D.C. (David L. Slate, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, Vincent Blackwood, Assistant Gen. Counsel, W. Sherman Rogers, Atty., E.E.O.C., Washington, D.C., on the brief), for plaintiff-appellee.

John Price, Tulsa, Okl. (Georgina B. Landman, Tulsa, Okl., on the brief), for plaintiff-intervenor-appellee.

Before SETH, Chief Judge, and BARRETT, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) instituted this action

under 42 U.S.C. § 2000e *et seq.* (1976) (Title VII) against Preston Gaddis individually and d/b/a Morning American (hereinafter referred to as Gaddis). The EEOC alleged that Gaddis intentionally committed an unlawful employment practice by discriminating against Hugh Stone, who is black. Stone intervened, asserting claims against Gaddis under Title VII and 42 U.S.C. §§ 1981, 1983, and 1985(3) (1976). After a bench trial, the district court made findings of fact and conclusions of law and entered judgment against Gaddis on the Title VII and section 1981 claims.[1]

On appeal Gaddis contends that: (1) Stone's claim under section 1981 is barred by the applicable statute of limitations; (2) the district court erred in its findings and conclusions; and (3) the court also erred in denying Gaddis an opportunity to make a post-trial argument. The EEOC argues that this court has no jurisdiction to review the above claims because Gaddis failed to file a timely appeal from the judgment on the merits. We conclude that we may consider the merits of Gaddis' claims, and we affirm the judgment of the district court.

## I.

### TIMELINESS OF THE APPEAL

■ Stone's complaint asserted a request for attorney's fees along with claims for monetary and injunctive relief. In its decision on the merits, entered March 25, 1982, the district court awarded Stone backpay under Title VII and compensatory and punitive damages under section 1981, in the total amount of $18,225. The court further concluded that Stone was entitled to attorney's fees pursuant to Title VII and 42 U.S.C. § 1988 (1976), but did not set an amount. The parties subsequently stipulated to the amount of attorney's fees, and the court then entered a second judgment on June 11, 1982. This judgment ordered the same relief provided in the March 25

decision and in addition awarded Stone $6,000 in attorney's fees. Gaddis filed his appeal on August 4, 1982, one hundred days after the March 25 judgment but within sixty days of the judgment setting the amount of attorney's fees.[2]

In *Gurule v. Wilson,* 635 F.2d 782, 787 (10th Cir.1980), this court held that a judgment on the merits is not a final order for purposes of appeal if it does not address a prior request for attorney's fees made pursuant to section 1988. We extended the *Gurule* analysis in *Glass v. Pfeffer,* 657 F.2d 252, 255 (10th Cir.1981), and concluded that if a request for attorney's fees was not made before entry of judgment on the merits, "such application must be made within the ten-day period required by Fed. R.Civ.P. 59(e) for alteration or amendment of a judgment." *Id.* We held that where a request for attorney's fees was made prior to the end of the ten-day post-judgment period, "there is no appealable final order until this issue is decided or abandoned." *Id.*

On March 2, 1982, shortly before the original judgment on the merits in the instant case, the Supreme Court ruled that a post-judgment application for attorney's fees is not a Rule 59(e) motion to alter or amend a judgment so as to be subject to the ten-day rule. *See White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 451–52, 102 S.Ct. 1162, 1166–67, 71 L.Ed.2d 325 (1982). "[A] request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action—issues to which Rule 59(e) was never intended to apply." *Id.* at 451, 102 S.Ct. at 1166 (footnote omitted).

The EEOC argues that *White* overruled *Gurule,* and that under the holding in *White* the March 25 judgment was a final order from which Gaddis failed to take timely appeal. We disagree. While *White* clearly overruled *Glass,* the ruling was narrow. The Court did not decide the appeala-

---

**1.** The district court granted summary judgment for Gaddis on Stone's claims under sections 1983 and 1985(3). Stone does not raise this ruling as error on appeal.

**2.** Under Fed.R.App.P. 4(a), the notice of appeal may be filed within sixty days when an agency of the United States is a party.

bility of a judgment that does not finally dispose of a request for attorney's fees made in the complaint, the fact situation presented in *Gurule* and in the present case. Although this court subsequently relied on the rationale in *White* to conclude that *Gurule* should no longer be followed, *see Cox v. Flood*, 683 F.2d 330 (10th Cir. 1982), we cannot agree that *White* overruled *Gurule* directly in view of the factual distinctions between the two cases.

In *Cox*, we expressly overruled *Gurule* and held that "judgments finally disposing of the merits are appealable even though questions relating to attorney's fees have been left undecided." *Id.* at 331. This decision was issued after the instant appeal was filed. Given Gaddis' failure to file an appeal within sixty days of the March 25 judgment, we must determine whether *Cox* should be applied retroactively to preclude our review of the merits of that judgment.

Three factors are relevant to the nonretroactive application of judicial decisions.

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed .... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'"

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted); *see also Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87–88, 102 S.Ct. 2858, 2880–2881, 73 L.Ed.2d

598 (1982) (plurality opinion); *West v. Keve*, 721 F.2d 91, 95 (3d Cir.1983).

All of the *Chevron* factors weigh in favor of nonretroactive application in this case. First, our decision in *Cox* made a clear break with past precedent, as exemplified by *Gurule* and *Glass*, upon which the parties may have relied. Moreover, in balancing the second and third *Chevron* factors, we conclude that retroactive application would impose a substantial inequity on Gaddis. At the time the March 25 judgment was entered, "a district court's disposition on the merits [was] not reviewable under 28 U.S.C. § 1291 until the claim for attorney's fees [had] been resolved." *Cox*, 683 F.2d at 331. It would be most unjust to hold that review of the merits is barred because Gaddis did not file an appeal that would have been premature under the law at the time. *See West*, 721 F.2d at 95. Consequently, we decline to apply *Cox* retroactively. The appeal was therefore timely.

## II.

### STATUTE OF LIMITATIONS

Stone's cause of action accrued in early July 1978. He filed his complaint on March 20, 1981, more than two years and less than three years later. In concluding that Stone's suit was timely, the district court applied the three-year statute of limitations for an unwritten contract provided in Okla. Stat. tit. 12, § 95 (Second) (1981), which accords with our decisions in *Shah v. Halliburton*, 627 F.2d 1055, 1059 (10th Cir.1980), and *Zuniga v. AMFAC Foods, Inc.*, 580 F.2d 380, 386–87 (10th Cir.1978). On appeal, Gaddis argues that the controlling limitations period is that found in Okla. Stat. tit. 12, § 95 (Third) (1981), which provides that an action for "injury to the rights of another, not arising on contract, and not hereinafter enumerated" must be brought within two years.

Because Congress has not enacted a statute of limitations expressly applicable to claims under sections 1981 and 1983, the courts must adopt the most analogous limi-

tations period provided by state law. *See* 42 U.S.C. § 1988 (1976); *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). In *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984) (en banc), we considered the method by which an appropriate state statute is to be selected for section 1983 claims. We concluded as a matter of federal law that for statute of limitations purposes all section 1983 claims should be characterized as actions for injury to personal rights. *See id.* at 650–651.

■ The rationale supporting our conclusion in *Garcia* is equally applicable to claims brought under section 1981. "The interests protected and the evil sought to be remedied are similar under both § 1981 and § 1983, and no significant reason exists to justify differentiating between them for limitation purposes." *Marshall v. Electric Hose & Rubber Co.,* 68 F.R.D. 287, 293 (D.Del.1975); *see also Plummer v. Western International Hotels Co.,* 656 F.2d 502, 506 (9th Cir.1981); *Movement for Opportunity & Equality v. General Motors Corp.,* 622 F.2d 1235, 1243 (7th Cir.1980). Accordingly, adopting the analysis set out in *Garcia,* we hold that all section 1981 claims are in essence actions for injury to personal rights. In so doing, we expressly overrule *Shah* and *Zuniga* to the extent they are inconsistent with this opinion.[3] Under this holding, the most analogous Oklahoma statute is the two-year limitations period for an injury to the rights of another. *See* Okla.Stat. tit. 12, § 95 (Third). Stone's suit is therefore barred unless we determine that our holding should not be retroactively applied to the facts of this case.

The three factors relevant to the nonretroactive application of judicial decisions set

out in *Chevron,* see Part I *supra,* have "consistently been utilized where changes in statutes of limitations or other aspects of the timeliness of a claim are at issue." *Occhino v. United States,* 686 F.2d 1302, 1308 n. 7 (8th Cir.1982). *See also Fernandez v. Chardon,* 681 F.2d 42, 51–53 (1st Cir.1982), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1353 (9th Cir.1981); *Wachovia Bank & Trust Co. v. National Student Marketing Corp.,* 650 F.2d 342, 346–48 (D.C.Cir. 1980), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981).

■ Under the *Chevron* analysis, retroactivity is appropriate unless the new decision overrules past precedent on which the parties may have relied. Our conclusion that all section 1981 claims uniformly should be characterized as actions for injury to personal rights is based on *Garcia,* which specifically rejected the approach under which civil rights claims are characterized by comparing the particular facts underlying the federal claim to factually similar state law actions. However, prior decisions of this court had expressly adopted the analysis abandoned in *Garcia,* and applied it to section 1981 suits. *See Shah,* 627 F.2d at 1058; *Zuniga,* 580 F.2d at 383–84. Thus, the court in *Zuniga* considered those cases applying a uniform limitation to all civil rights claims and those cases analyzing the particular facts in terms of traditional common law torts, and adopted "the latter approach of critical analysis of the particular claim, and then determining if there is a comparable state law analogue." *Zuniga,* 580 F.2d at 383. *Shah* relied on the *Zuniga* approach to conclude that "a section 1981 claim for discriminatory discharge from employment [has] the elements of both a contract and a tort claim." *Shah,* 627 F.2d at 1059.[4] Our

---

**3.** Because this panel opinion overrules prior decisions, it has been circulated among all the judges of this court in regular active service. All judges, except Judge Holloway who did not participate, have expressed agreement with the conclusions reached herein as to the application of the *Garcia* analysis to section 1981 actions.

**4.** *Shah* also held that when more than one state statute of limitations is arguably applicable, the longer one should be applied. 627 F.2d at 1059. We recently overruled this holding in *Jackson v. City of Bloomfield,* 731 F.2d 652, 654 (10th Cir.1984) (en banc), a section 1983 case adopting the *Garcia* approach.

decision today overrules the analysis of section 1981 claims employed in *Zuniga* and *Shah.*

■ In weighing the second and third *Chevron* factors, we conclude that retroactive application would impose a substantial inequity on Stone. At the time Stone filed his complaint, *Shah* and *Zuniga* constituted clear authority that a section 1981 claim was governed by the three-year limitations period applied by the district court. Stone justifiably could have relied on those cases in concluding that his suit was timely. It would be most unjust to hold that Stone slept on his rights based on a change in the law occurring after his action was filed. *See Jackson v. City of Bloomfield,* 731 F.2d 652, 654 (10th Cir.1984) (en banc).

For the above reasons, we decline to apply retroactively our decision as to the appropriate statute of limitation. Consequently, Stone's lawsuit is not barred.

### III.

### THE FINDINGS AND CONCLUSIONS

■ Gaddis launches a broad attack on the trial court's finding of discrimination, contending that the court did not apply the proper evidentiary burdens to the Title VII claim, and that the record does not support several critical fact-findings or the award of punitive damages. We conclude that the court evaluated the evidence under the applicable law, and that its findings of fact are supported by the record.

In a Title VII case, the evidentiary burdens and the presentation of proof proceed in three stages.

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate rea-

sons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citations omitted) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* 450 U.S. at 253, 101 S.Ct. at 1093. The district court correctly stated and applied the above legal standards in resolving the issue of intentional discrimination.

The district court grounded its decision in favor of the EEOC and Stone on the following fact-findings. Gaddis operated a newspaper, the *Bartlesville Morning American,* as a sole proprietorship. The paper had no formal hiring procedure. Marcus Meng, the newspaper's general manager and executive editor, and William Hirschman, an editor and reporter, jointly interviewed and hired applicants for employment. Meng had final hiring authority, and his decisions normally were approved by Gaddis without question.

In June 1978, the paper's two photographers were heavily overworked and one photographer let it be known that he planned to resign at the end of the month. Meng, Hirschman, and the other photographer, Castleberry, decided to hire a photography lab technician who would begin as an assistant and eventually move into the position of staff photographer. Hirschman suggested Stone, who had been his college roommate. Stone had degrees in journalism and sociology from the University of Missouri, and was a professional free-lance photographer and writer. He was qualified for the job with the newspaper.

Upon Meng's authorization, Hirschman contacted Stone, a Los Angeles resident, and learned that Stone was interested in the job. Meng then authorized Hirschman to offer Stone the job at $175 a week. Hirschman and Castleberry together called

Stone from the paper to offer him the job, which he accepted. Stone made arrangements to move to Bartlesville, and his name was posted on the newsroom assignment board as a new employee.

When Hirschman brought Stone to the newspaper on July 4, 1978, Meng called Hirschman into his office alone before Hirschman could introduce Stone to anyone. Meng was visably upset at discovering that Stone was black, and said that Gaddis would never allow a black in the office. Stone worked two or three days at the paper with Meng's permission while Hirschman tried to work things out with Gaddis. Meng later told Hirschman that Gaddis had said Stone could not continue to work. Although denying any racial prejudice, Gaddis himself told Hirschman that Stone couldn't work because no vacancy existed and because Meng had no hiring authority.

Following Stone's departure, the remaining photographer assumed expanded duties and other staff members carried on some photography work. The paper subsequently hired two white male photographers who worked for the paper at the same time for a period of several months.

■ Based on the above findings, the court determined that Stone and the EEOC had established a prima facie case of racial employment discrimination and that Gaddis had rebutted the prima facie case by producing admissible evidence of a lawful reason for denying employment to Stone.[5] The court further found that Stone and the EEOC had proven by a preponderance of the evidence that the reasons offered by Gaddis were a mere pretext for discrimination, and that they had carried the ultimate burden of proving intentional discrimination.

5. Gaddis argues that the trial court did not specify what fact-findings supported its conclusion that Stone had established a prima facie case and that Gaddis had rebutted it. "Findings satisfy Rule 52 if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Lujan v. New Mexico Health & Social Servs. Dep't,* 624 F.2d 968, 970

"[W]hen the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII."

*United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (footnote omitted). The existence of discrimination violative of Title VII is a question of fact that we may reverse on appeal only if the finding is clearly erroneous under Fed.R.Civ.P. 52(a). *Whatley v. Skaggs Cos.,* 707 F.2d 1129, 1136 (10th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983); *see also Pullman-Standard v. Swint,* 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982).

"Findings are not to be determined clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made.... As an appellate court, it is not for us to determine whether the trial court reached the correct decision, but whether it reached a permissible one in light of the evidence. 'When a case is tried to the district court, the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses.'"

*Higgins v. Oklahoma ex rel. Oklahoma Employment Security Commission,* 642 F.2d 1199, 1202 (10th Cir.1981) (citations omitted) (quoting *Dowell v. United States,* 553 F.2d 1233, 1235 (10th Cir.1977)).

■ In this case, the testimony was conflicting and credibility was a critical issue. "[W]here the evidence supports a conclu-

(10th Cir.1980). The findings set forth above are more than adequate in this regard. Moreover, as discussed *infra,* the relevant inquiry at this stage of the proceedings is whether the findings provide a factual basis for the court's ultimate finding of intentional discrimination. *See, e.g., Curry v. Oklahoma Gas & Elec. Co.,* 730 F.2d 598, 601 (10th Cir.1984).

sion either way the choice between two permissible views of the weight of the evidence is not 'clearly erroneous' as the term is used in Rule 52(a), Fed.R.Civ.P." *United States v. Denver & Rio Grande Western Railroad,* 547 F.2d 1101, 1103 (10th Cir.1977). Based on our review of the record, we do not have a definite and firm conviction that the trial court's finding of intentional discrimination is incorrect.

■ Gaddis argues that the record does not support imposing liability on him for the actions taken by Meng. We disagree. An employer is liable under both Title VII and section 1981 "where the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy." *Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979); *see also Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277, 1282 (7th Cir.1977); *Lucero v. Beth Israel Hospital & Geriatric Center,* 479 F.Supp. 452, 455 (D.Colo.1979). Under this standard, the trial court's finding that Meng had final hiring authority is clearly sufficient to hold Gaddis liable for Meng's conduct. In addition, there is sufficient record evidence to support the inference that Meng was following Gaddis' policy, and that Gaddis himself took part in the discriminatory decision.

■ Gaddis also urges that the trial court's award of punitive damages was not supported by the record. We disagree. The court's findings as a whole are sufficient to establish that the discrimination in this case was malicious, willful, and in gross disregard of Stone's rights.

" 'The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact.' "

*Miller v. City of Mission,* 705 F.2d 368, 377 (10th Cir.1983) (quoting *Busche v. Burkee,* 649 F.2d 509, 520 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)).

■ Finally, we address Gaddis' contention that the court erroneously issued its decision without permitting him to make a post-trial argument. Gaddis has cited no authority establishing a civil litigant's right to post-trial oral argument in a bench trial. Moreover, although the court below provided Gaddis an opportunity to present his arguments in a post-trial brief, Gaddis chose not to do so. We find no grounds for reversal here. *Accord Nolan v. de Baca,* 603 F.2d 810, 812 (10th Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980).

The judgment of the district court is affirmed.

Before SETH, Chief Judge, and McWILLIAMS, BARRETT, WILLIAM E. DOYLE, McKAY, LOGAN and SEYMOUR, Circuit Judges.

### EN BANC ORDER

The active judges of the Tenth Circuit, with the exception of Honorable William J. Holloway, Jr., who did not participate in this appeal, hereby authorize and concur in the in banc decision issued herein on May 2, 1984, and in the action expressly overruling *Shah v. Halliburton,* 627 F.2d 1055 (10th Cir.1980), and *Zuniga v. AMFAC Foods, Inc.,* 580 F.2d 380 (10th Cir.1978), to the extent they are inconsistent with the opinion filed herein on May 2, 1984.