849 F.2d 1261
 George A. GLASS, Jr. and Nona Glass, Plaintiffs,
and
Phelps-Chartered, Appellant,
v.
Ron PFEFFER, Walt Mosby, Joe Iarossi, Robert Robinson, Ray
Vines, Jim Weckwerth, and James Gilchrist, Defendants,
and
Dean Forster, Defendant-Appellee.
 No. 85-2823.
 United States Court of Appeals,
Tenth Circuit.
 June 13, 1988.
 
 Margie J. Phelps of Phelps-Chartered, Topeka, Kan., for appellant Phelps-Chartered.
 William E. Enright of Scott, Quinlan & Hecht, Topeka, Kan., for defendant-appellee Dean Forster.
 Before LOGAN, McWILLIAMS and TIMBERS,* Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 In an earlier appeal in this case, this court affirmed a judgment dismissing a civil rights action brought by plaintiffs Glass against defendant police officers. Glass v. Pfeffer, 657 F.2d 252 (10th Cir.1981) (Glass I ). Before that appeal was taken, the district court ordered plaintiffs and the law firm (Fred W. Phelps-Chartered) of their counsel, Fred W. Phelps, Jr., to pay $1400 in attorney's fees which one defendant, Dean Forster, incurred after his deposition was taken by plaintiffs. The district court ruled that Forster's deposition clearly demonstrated that he was not present at the time of the mistaken arrest that formed the basis of plaintiffs' complaint. The court found no excuse for plaintiffs' failure voluntarily to dismiss Forster from the action after taking that deposition.
 
 
 2
 In Glass I we held that the district court applied the proper test in awarding attorney's fees to defendant Forster. We said that Forster "was not involved in the incident giving rise to this arrest. Plaintiffs' claims of a conspiracy involving Forester [sic] are clearly without basis in fact." Id. at 257. However, we reversed the award against plaintiffs' counsel because the district court based its holding on 28 U.S.C. Sec. 1927, and a Supreme Court opinion issued soon after the district court's order held that the version of Sec. 1927 then in effect did not contemplate attorney's fees as a part of such costs. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Yet we affirmed the district court's inherent power to award for attorney's fees against the law firm, and we remanded the case with the express statement that the district court "may assess attorneys' fees against plaintiffs' counsel personally, if it gives him the requisite notice and hearing and finds the requirements set forth in Roadway are met in this case." Glass I, 657 F.2d at 258.
 
 
 3
 On remand, then, the sole issue became whether attorney's fees should be assessed against plaintiffs' counsel. The court's hearings on this issue nevertheless mushroomed into a major trial about counsel's good faith and the legal propriety of leaving Forster a defendant in the case after the deposition. Phelps-Chartered called many witnesses, and filed numerous motions and other documents resulting in several rulings by the district court. Ultimately the court held the Phelps-Chartered firm responsible for Forster's attorney's fees in the amount of $7734.34, including the $1400.00 originally assessed.
 
 
 4
 As all other issues were resolved in Glass I, the instant appeal addresses only the propriety of the attorney's fee award and its amount. In essence, Phelps-Chartered raises four issues relating to the award: (1) whether any attorney's fee award was justified against plaintiffs' attorneys; (2) whether the amount awarded is sustainable; (3) whether the award was proper against Phelps-Chartered rather than Fred W. Phelps, Jr. or Fred W. Phelps-Chartered; and (4) whether the district judge should have recused himself.
 
 
 5
 * This court's opinion in Glass I comprised the law of the case for the district court on remand. We found that the award of attorney's fees in favor of Forster was justified under the district court's inherent power, Glass I, 657 F.2d at 257-58, the only infirmity being in the notice and opportunity for hearing before making the award. Id. Thus, the sole issue on remand should have been whether fees were properly placed upon the attorney rather than upon plaintiffs alone. Normally such a hearing would address whether the attorney had a reasonable excuse or some explanation that would convince the court that the client or another person should be held responsible for the actions subject to sanction. Instead, the attorneys here attacked the court's findings of bad faith and abuse of process which underlay the award, arguing strenuously that Forster was properly retained in the case after they discovered that he was not present at the arrest. In particular, they argued that Forster was a proper defendant under 42 U.S.C. Sec. 1985(2) for conspiracy to interfere with access to or testimony in federal court.
 
 
 6
 We find that the district court properly rejected plaintiff's Sec. 1985(2) claim on both procedural and substantive grounds. Procedurally, we are satisfied that plaintiffs' lawsuit, against which the district court granted summary judgment, did not include a Sec. 1985(2) claim. Plaintiffs' complaint alleged no claim under Sec. 1985(2); it referred solely to 42 U.S.C. Secs. 1981, 1983 and 1985(3), I R. tab 1 at 3. Later proceedings before the district court's grant of summary judgment show that plaintiffs viewed their case against Forster solely as a Sec. 1985(3) conspiracy to deprive plaintiffs of "equal protection of the laws." Nowhere in these proceedings did plaintiffs state that their theory involved a Sec. 1985(2) conspiracy to interfere with federal court proceedings. See Response to Motion for Summary Judgment of the Defendant Forster, I R. tab 41 at 2 (claiming Sec. 1985(3) violation); VII R. at 36-37 (argument by plaintiffs' attorney that Forster was part of general conspiracy; Sec. 1985(2) or interference with federal courts not mentioned). Plaintiffs acted at their peril by not presenting their Sec. 1985(2) legal theory to the district court. See Denis v. Liberty Mutual Insurance Co., 791 F.2d 846, 848-49 (11th Cir.1986) ("Failure to raise [a] ... theory of relief in the first instance to the trial court generally is fatal"); see also Gilbert v. Medical Economics Co., 665 F.2d 305, 310 (10th Cir.1981). By failing to raise a Sec. 1985(2) legal theory before the district court, plaintiffs foreclosed themselves from arguing that theory on appeal or on remand, and plaintiffs' counsel cannot now rely on this theory to justify the actions before the district court.
 
 
 7
 Further, even ignoring the failure to present a Sec. 1985(2) claim to the district court, we hold that such a theory, on the facts alleged, was sufficiently lacking in substance that the court was justified in imposing the sanctions awarded here. Section 1985(2) consists of four clauses, each creating a distinct cause of action. This court has parsed the first clause, upon which plaintiffs base their claim, as follows: "If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, ...." Wright v. No Skiter, Inc., 774 F.2d 422, 425 (10th Cir.1985) (quoting Kimble v. D.J. McDuffy, 623 F.2d 1060, 1064 (5th Cir.1980), modified on other grounds, Kimble v. D.J. McDuffy, Inc., 648 F.2d 340 (5th Cir.1981) (en banc)), cert. denied, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).[1]
 
 
 8
 In essence, plaintiff George Glass alleges that Forster visited with him shortly after police mistakenly entered his home and arrested him and that Forster conspired with other defendants in the case by drawing up a report falsely describing what George Glass said. Even if we accept plaintiffs' allegation that Forster lied in his report as part of a conspiracy, plaintiffs nonetheless fail to allege that these actions in any way intimidated or deterred them from subsequently pursuing this action in federal court. Absent the element of intimidation or deterrence, plaintiffs suffered no injury under Sec. 1985(2), and thus did not state a colorable Sec. 1985(2) claim. See Brown v. Chaffee, 612 F.2d 497, 502 (10th Cir.1979) (rejecting witness intimidation claim under Sec. 1985(2) because conspiracy was not one "directly affecting, in the context of this case, the act of testifying as a witness"); McLean v. International Harvester Co., 817 F.2d 1214, 1218 (5th Cir.1987) (following Brown ); Chahal v. Paine Webber, Inc., 725 F.2d 20, 23 (2d Cir.1984) (setting forth elements of witness intimidation claim under Sec. 1985(2); alleged conspiracy to intimidate or deter must cause injury to plaintiff); Malley-Duff & Associates, Inc. v. Crown Life Insurance Co., 792 F.2d 341, 355-56 (3d Cir.1986) (following Chahal ), aff'd sub nom. Agency Holding Corp. v. Malley-Duff & Associates, Inc., --- U.S. ----, 107 S.Ct. 2759, 93 L.Ed.2d 573 (1987); Miller v. Glen & Helen Aircraft, Inc., 777 F.2d 496, 498 (9th Cir.1985) (same).[2]
 
 
 9
 We therefore affirm the district court's initial award of attorney's fees on remand. Further, we reject the contention that the district court failed to find subjective bad faith or its equivalent. The court, with ample support from the record, found that "plaintiffs' counsel willfully continued to advance groundless and patently frivolous litigation against defendant Forster," II R. tab 193 at 9, and that such conduct was "tantamount to bad faith." Such a finding is not clearly erroneous, Sterling Energy, Ltd. v. Friendly National Bank, 744 F.2d 1433, 1435-36 (10th Cir.1984), and describes conduct sufficiently grave to be sanctioned under the court's inherent power to control attorney conduct. Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); see also Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir.1987) (en banc) ("Subjective good faith ought not to be an infinitely expansive safe harbor to protect an attorney who brings an action that a competent attorney could not under any conceivable justification believe not frivolous.").
 
 II
 
 10
 Phelps-Chartered next raises two arguments concerning the amount of attorney's fees awarded. First it asserts that even if the initial award of $1400.00 in fees was proper, the district court erred in awarding Forster an additional $6334.34 for litigating on remand his entitlement to the fee award. This argument implicates competing concerns. On the one hand, we held in Glass I, 657 F.2d at 258, that plaintiffs' counsel had a due process right to notice and hearing to contest the imposition of fees. As Phelps-Chartered suggests, this right would be of little value if its exercise automatically results in a still larger fee award. On the other hand, when, as here, attorneys engage in scorched earth tactics to challenge such a fee award, a refusal to permit recovery of additional fees for defending that award would allow counsel to dilute the value of the original award or force the recipient to abandon that award entirely.
 
 
 11
 Although a party in Forster's position should not always be entitled to additional attorney's fees for defending, at a due process hearing, an earlier fee award, we uphold the award of additional fees here. Our original remand was directed solely to providing notice and a hearing concerning the fee award; Phelps-Chartered went well beyond the scope of this remand order, greatly multiplying the proceedings after remand. The district court addressed the actions and arguments of Phelps-Chartered with great patience, and allowed the attorneys leeway far beyond what due process requires. Cf. Braley, 832 F.2d at 1514-15. Phelps-Chartered, through its own motion for a pretrial conference, I R. tab 128 at 3, its receipt of Forster's regular submission of statements for fees incurred in defending his award, see Doc. Nos. 143, 187, 192, and its awareness of the district court's ruling that Forster could recover "fees generated in proceedings in connection with the application for the fees," XI R. 19, was on notice that Forster was seeking fees for this remand procedure.[3]
 
 
 12
 Phelps-Chartered's second challenge to the amount of fees awarded is that the district court did not require sufficient documentation as to the reasonableness of the fees awarded. We likewise reject this argument. Forster submitted documentation, see Doc. Nos. 143, 187, 192, upon which the district court expressly relied in awarding fees. See II R. tab 193 at 10. Because Phelps-Chartered did not object before the district court to the adequacy of this documentation, we will not consider this argument now on appeal. Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1556 (10th Cir.1988).
 
 III
 
 13
 Phelps-Chartered next contends that the award should have been against Fred W. Phelps, Jr. or Fred W. Phelps-Chartered, rather than against Phelps-Chartered, some of whose owners or employees were not practicing law at the time of the attorney dereliction in this case. In this regard, Phelps-Chartered first asserts that the district court improperly shifted the award after remand from Fred W. Phelps, Jr., individually to Phelps-Chartered. The record, however, clearly shows that the original fee award was against Fred W. Phelps-Chartered, and not against Fred W. Phelps, Jr. or any individual attorney. I R. tab 109 at 9-10; I R. tab 114 at 3-4.[4] Our examination of the record satisfies us that the district court made quite clear that it intended to levy sanctions against the law firm that employed Fred W. Phelps, Jr. rather than holding him personally and solely responsible.
 
 
 14
 Under general legal principles a corporation is liable for the acts of its employees committed within the scope of employment. Kline v. Multi-Media Cablevision, Inc., 233 Kan. 988, 989, 666 P.2d 711, 713 (1983); Russell v. American Rock Crusher Co., 181 Kan. 891, 894, 317 P.2d 847, 849 (1957). More specifically, it is appropriate to levy attorney's fees against a firm that is responsible for the pleadings signed by its employees. Calloway v. Marvel Entertainment Group, 650 F.Supp. 684, 686-87 (S.D.N.Y.1986) (firm on whose behalf attorney signed papers liable under Fed.R.Civ.P. 11); Golden Eagle Distributing Corp. v. Burroughs Corp., 103 F.R.D. 124, 125 n. 1, 129 (N.D.Cal.1984), rev'd on other grounds, 801 F.2d 1531 (9th Cir.1986) (same); see Frazier v. Cast, 771 F.2d 259, 260, 266 n. 6 (7th Cir.1985) (state's attorney sanctionable under respondeat superior doctrine for infraction by assistant state's attorney).
 
 
 15
 At the time of the breach of duty, the Fred W. Phelps-Chartered corporation apparently was the employer of Fred W. Phelps, Jr., for the signature on the original complaint is Fred W. Phelps-Chartered by Fred W. Phelps, Jr. I R. tab 1 at 4. Phelps-Chartered, the appellant herein, is the successor to Fred W. Phelps-Chartered. Although a successor corporation is not generally liable for the debts of its transferor, an exception exists when the successor is merely a continuation of its predecessor. Crozier v. Menzies Shoe Co., 103 Kan. 565, 175 P. 376, 376-77 (1918); City of Altoona v. Richardson Gas & Oil Co., 81 Kan. 717, 106 P. 1025, 1025 (1910); see also R.J. Enstrom Corp. v. Interceptor Corp., 555 F.2d 277, 281-82 (10th Cir.1977) (Oklahoma law). On remand in the instant case Forster argued that Phelps-Chartered was a mere continuation liable for the debts of Fred W. Phelps-Chartered, I R. tab 143 at 2, and that he therefore sought his fee award against the latter. Phelps-Chartered never challenged this characterization before the district court, despite having ample opportunity to do so. Further, the general conduct of the litigation before the district court indicates that Phelps-Chartered merely continued the business of Fred W. Phelps-Chartered; the attorney for Phelps-Chartered at one point told the court that "Fred W. Phelps Chartered ... is now Phelps Chartered." X R. 7. By awarding fees against the successor, the district court implicitly found it to be liable on this debt of its predecessor, a finding we hold is not clearly erroneous.
 
 IV
 
 16
 Phelps-Chartered argues that Richard Rogers, the district judge who presided throughout, should have recused himself from the case before assessing these fees. See 28 U.S.C. Secs. 144 and 455. This argument appears to be based upon the belief that Judge Rogers was and remained prejudiced generally against Phelps-Chartered and its civil rights clients, and that he became further biased against the firm because its members sought the recusal of District Judge Earl O'Connor in July 1985. We reject this argument.
 
 
 17
 Turning first to Phelps-Chartered's claims of bias against the firm or against civil rights plaintiffs in general, we note that Sec. 144 requires an affidavit of bias and prejudice, which must be timely, sufficient, made by a party, and accompanied by a certificate of good faith of counsel. Hinman v. Rogers, 831 F.2d 937, 938 (10th Cir.1987) (per curiam). Second, although we must accept the truth of the facts alleged in the affidavit under Sec. 144, United States v. Ritter, 540 F.2d 459, 462 (10th Cir.) (per curiam), cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976), we construe that affidavit strictly against the party seeking recusal. Weatherhead v. Globe International, Inc., 832 F.2d 1226, 1227 (10th Cir.1987). The affidavit is insufficient if it merely states conclusions, rumors, beliefs and opinions; it must "state with required particularity the identifying facts of time, place, persons, occasion, and circumstances." Hinman, 831 F.2d at 939. Applying this standard, we hold that the district court did not err in ruling against Phelps-Chartered under Sec. 144; the Phelps-Chartered affidavit lacked particularity, and was filled with conclusions, rumors and inuendo.
 
 
 18
 Addressing these same claims under Sec. 455, we note that section provides considerably broader scope for claims of prejudice and bias. Under this section, factual allegations need not be taken as true, and the test is whether "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." Hinman, 831 F.2d at 938. Applying this standard, after reviewing the record we are convinced that no reasonable person could doubt Judge Rogers' impartiality in the proceedings below.
 
 
 19
 Finally, we address the allegations of "conspiracy" between Judges Rogers and O'Connor. Despite the serious nature of this charge, it boils down to the happenstance of the timing of the July 31, 1985 motion for O'Connor to recuse, II R. tab 197 at App.A, and Judge Rogers' August 22, 1985 ruling in the instant case upholding sanctions. While such timing might in some circumstances support an inference of conspiracy, we do not believe that it does here, either under Sec. 144 or Sec. 455.[5] The initial award of attorney's fees was made January 25, 1980. I R. tab 109 at 9. The Glass I decision, ordering the remand, issued August 3, 1981. The remand proceedings in district court commenced shortly thereafter, and, as noted above, should have been concluded years before the 1985 events relied upon in this argument. The delays were the responsibilities of the sanctioned attorneys and arise from an apparent policy of contesting everything, conceding nothing, to the bitter and protracted end.
 
 
 20
 Any charge that judges improperly conspired to the prejudice of litigants is most grave, and must rest on more than Phelps-Chartered provided here. As the Federal Circuit recently stated, "Counsel should not make such an assertion precipitously or recklessly, nor on unsupported rumor, conjecture, and speculation. To do so is to trifle with the court and the administration of justice." Maier v. Orr, 758 F.2d 1578, 1583-84 (Fed.Cir.1985). The record is clear that Phelps-Chartered's recusal motions in fact are simply an avenue to attack adverse rulings made in a case pending in the district court since 1977. Such adverse rulings are not in themselves grounds for recusal. United States v. Bray, 546 F.2d 851, 857 (10th Cir.1976). The district judge did not abuse his discretion in refusing to recuse himself. Weatherhead, 832 F.2d at 1227.
 
 V
 
 21
 Finally, we have before us a motion to award Forster attorney's fees for the defense of this appeal. Phelps-Chartered has responded in part by asking for time, if we should affirm as we do here, to review and possibly contest the hours and proposed charges. We grant Forster's motion for attorney's fees, to be paid by Phelps-Chartered. Despite our concern that the district court has already been overburdened by this case, we believe that court is better equipped to resolve whatever challenges Phelps-Chartered may make to the hours and charges than this appellate court. Therefore we remand to the district court for the sole and limited purpose of determining a reasonable fee for the time spent defending on appeal the attorney fee award to Forster. Phelps-Chartered can present there any challenges to the reasonableness of appellee Forster's fee request.
 
 
 22
 AFFIRMED, but remanded for a determination of an appropriate attorney fee award for Forster's defense of this appeal.
 
 
 
 *
 Honorable William H. Timbers, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 The second clause deals with retaliation against parties or witnesses for having attended or testified in federal court. Plaintiffs allege no such retaliation by Forster after the commencement of their federal court action. Clauses three and four concern interference with state court proceedings, none of which occurred here
 
 
 [2]
 In finding on remand that plaintiffs' Sec. 1985(2) theory was not colorable, and thus affirming its earlier award of attorney's fees, the district court stated that no "racial animus" supported plaintiffs' claim. II R. tab 193 at 6 (Memorandum & Order of Aug. 22, 1986). While plaintiffs assert this to be error under Kush v. Rutledge, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), the district court's reference was only in relation to those parts of Sec. 1985(2) and Sec. 1985(3) for which Kush had not rejected a racial animus requirement. We thus find plaintiffs' assertion meritless
 
 
 [3]
 In the analogous area of fee litigation under statutory fee provisions, courts commonly allow additional attorney's fees for time spent in establishing an original fee entitlement. As the Third Circuit has stated: "It is obviously fair to grant a fee for time spent litigating the fee issue, at least if the fee petitioner is successful and his claim as to a reasonable fee is vindicated, since it is the adversary who made the additional work necessary." Prandini v. National Tea Co., 585 F.2d 47, 54 n. 8 (3d Cir.1978). This circuit is in accord. Hernandez v. George, 793 F.2d 264, 269 (10th Cir.1986)
 
 
 [4]
 Our initial opinion in this case erroneously referenced that the district court assessed costs against Fred W. Phelps, Jr. personally, Glass I, 657 F.2d at 257. Despite our reference to a fee award as being against Mr. Phelps personally, we are convinced that the record in the district court shows the sanction to have been against Fred W. Phelps-Chartered from the beginning
 
 
 [5]
 Phelps-Chartered makes a second timing argument based on the coincidence of a motion to recuse filed against Judge Rogers by the Phelpses in another matter before him and Judge Rogers' decision, two months after the motion was filed, to award fees initially in this case. II R. tab 197 at 9-13. Again, mere coincidence of time does not carry Phelps-Chartered's "bias and prejudice" claim. By waiting more than five years after the alleged prejudicial act, Phelps-Chartered failed to file a "timely" motion for recusal. See Singer v. Wadman, 745 F.2d 606, 608 (10th Cir.1984) (timeliness is factor in evaluating Secs. 144 and 455 motions), cert. denied, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985)