**Delmer REYNOLDS,**
**Plaintiff-Appellant,**

v.

**HUMKO PRODUCTS,**
**Defendant-Appellee.**

No. 83–5935.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1984.
Decided March 8, 1985.

Alan Bryant Chambers, argued, Memphis, Tenn., for plaintiff-appellant.

Dale Woodall, argued, Evans, Petree, Cobb & Edwards, Memphis, Tenn., for defendant-appellee.

Before KEITH and KENNEDY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Appellant Delmer Reynolds brought this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17. Appellant, a white male who was employed as a truck driver for defendant Humko Products, was discharged for drinking a half pint of whiskey while on duty as a driver. Appellant alleged disparate treatment based on race, asserting that black employees were not discharged for committing comparable infractions.

After filing a timely complaint with the Equal Employment Opportunity Commission and receiving his right to sue letter, appellant brought his case to the district court. A bench trial was conducted before District Judge Julia Smith Gibbons, who ruled in favor of Humko Products at the close of the trial. Subsequently, Judge Gibbons filed written findings of fact and conclusions of law reaching the same result. Appellant appeals from this decision.

## I

Reynolds was employed as an over-the-road truck driver and before the incident described in this opinion apparently had performed his work satisfactorily since he was hired on November 12, 1973. Arthur J. Butler, Traffic and Distribution Manager for Humko Products at the Memphis, Tennessee plant where Reynolds was employed, was informed by driver David Mathis that Reynolds had been consuming liquor while on duty. He discussed the problem with James Davis, Personnel Manager at the plant, and they decided to investigate.

Davis and Butler followed appellant Reynolds and driver Mathis when the two were driving to Texas as a team on March 17, 1982. Mathis was to drive the first leg of the trip while Reynolds would rest. While their truck was stopped at a truck stop in West Memphis, Arkansas, Butler and Davis observed appellant enter a liquor store and return to the truck with a brown paper bag in his hand.

As the truck proceeded, the managers radioed the truck and ordered it to stop. They searched the truck and found a half pint bottle of bourbon that was half empty on the passenger side of the cab. After the managers threatened to fire both men if neither admitted to possessing the whiskey, appellant admitted to buying and drinking it. Appellant testified the managers promised to give him help if he admitted to the offense. Appellant was transported back to the company parking lot. At a meeting the following day, appellant again admitted to the offense and was fired after he refused the opportunity to resign.

All Humko Products employees were subject to a collective bargaining agreement governing the terms of employment. This agreement contained the following pertinent provisions:

Article XVI—Discipline And Discharges

Section 3. (a) With respect to violation of the following rules the Company may suspend or discharge an employee without any warning notice:

(1) Any theft, or dishonesty including, but not limited to ... payroll or work ticket; ... falsifying details of ... records, including reports ...

(3) Assault, fighting brawling or attempting bodily injury to another person on Company premises; ...

(8) Brings upon Company premises, possesses, drinks, uses, or is under the influence of alcoholic liquids, narcotics or drugs (other than prescription drugs for the employee) on Company premises, or while handling Company property, or at any time while on Company duty.

## II

At trial, appellant attempted to demonstrate that Humko employees who violate Article XVI, ¶ 8 of the collective bargaining agreement ordinarily are referred to alcohol treatment programs rather than terminated. He also attempted to establish disparate treatment by presenting instances where black employees were not terminated for violating various provisions of Article XVI. Appellant presented the following examples of black employees who were disciplined but not terminated for violating Article XVI.

James Thompson was in possession of a shotgun while driving his truck from Memphis to Birmingham at the time of the national truckers' strike in 1979. Drivers had been shot at while operating their rigs throughout the country and Mr. Thompson explained that he carried the gun for protection. He was given a five day suspension from June 25, 1979 to June 29, 1979.

Sherry Spencer allegedly drew a knife during a confrontation with another employee at the Humko Plant in Champaign, Illinois in 1977. After an investigation, the company was unable to gather sufficient evidence to prove that Mr. Spencer actually drew a knife. The company issued an oral warning.

Archie Ryce, an over-the-road driver, was given a five day suspension in September 1979. Mr. Ryce incurred personal expenses during a run to Waco, Texas, used a company credit card to pay for these expenses, and later applied for reimbursement of these personal expenses.

Appellant also presented a case involving a white over-the-road driver named Mitch Cauthen. He was suspended after his urinalysis revealed traces of drugs. The urinalysis test was performed during an annual physical and was not on company time. He was retained, but was not permitted to drive on the street.

During trial, appellee presented the case of a black employee, a Mr. Isby. Mr. Isby, a forklift operator, was terminated by Humko for drinking on duty in 1979. He was terminated out of considerations for public safety.

Appellant testified that he is an alcoholic. He admitted that he was aware of the company rule against drinking and that he had bought whiskey and drunk it while on duty, although not while driving. After his discharge he sought and received treatment for his drinking problem. He attempted to demonstrate that Humko ordinarily referred employees with drinking problems to treatment programs. He testified to his belief that the referral program existed, naming three Humko employees who had received treatment for alcoholism. Appellant argues that the company's reason for firing him was a pretext for discrimination.

Appellant also presented the testimony of Ray Gilliam, a white former superintendent at Humko Products' Memphis office. Mr. Gilliam testified that he was demoted to driver due to a drinking problem he had while serving as superintendent. He stated that he never drank on the job but may have been intoxicated on occasion while at work. Mr. Gilliam remained on the payroll while he received out-patient treatment at a local hospital.

The Personnel Manager, Mr. Davis, testified that Humko does not have a treatment program for alcohol abuse, but in meritorious cases refers employees who come forward and admit to their drinking problems to treatment programs at local hospitals. Mr. Davis was aware of no such referrals where employees were found intoxicated on the job, but indicated that referrals were appropriate where an employee with an absentee problem comes forward and admits to an alcohol problem. An employee's medical benefits cover alcoholism treatment programs.

## III

The district court found that Humko Products does not have its own rehabilitation program or refer its employees to outside programs in lieu of disciplinary measures for on the job use of alcohol. The court found that the company makes refer-

rals for professional help for alcohol or drug problems when an employee reports the problem to the company or the company learns of the problem in some manner other than through on the job use.

The court also held that appellant had failed to establish a prima facie case of discrimination. Noting that appellant's examples of different treatment for black employees did not involve drinking on the job or implicate safety concerns to the same degree, the court held that the black employees who were not discharged were not "situated similarly" to appellant. Moreover, the court noted, in the only comparable case a black employee was discharged for drinking while operating a forklift. No similarly situated employee was placed in a treatment program in lieu of punishment.

## IV

■■■ A detailed analysis of employment discrimination law is not necessary for disposition of this appeal. While an employer may determine that certain misconduct is grounds for termination, the standard must be "applied, alike to members of all races." *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). The district court held that appellant did not establish a prima facie case of discrimination and that he had not established disparate treatment because no black employees subject to less discipline had committed offenses of the same magnitude. These findings as well as the court's ultimate holding must be affirmed unless clearly erroneous. *Pullman-Standard Division of Pullman, Inc. v. Swint*, 456 U.S. 273, 289–90, 102 S.Ct. 1781, 1790–91, 72 L.Ed.2d 66 (1982).

■■■ Appellant contends that the court's findings were clearly erroneous and that the court erred by failing to give separate consideration to evidence demonstrating disparate treatment and pretext. The district court properly considered all the evidence appellant presented to determine whether he established a prima facie case.

We conclude that the district court correctly determined that appellant failed to make out a prima facie case of discrimination.

The examples presented by appellant of employees treated differently all concern situations that the employer reasonably could consider less egregious than drinking while on duty. Mr. Davis testified that Humko was concerned about the potential liability it would face, as well as possible fines and sanctions, if it allowed appellant to continue driving after being caught drinking on duty. The company reasonably could conclude that safety considerations were implicated to a greater extent where a driver drank alcohol while on duty than in the other cases where safety implications, civil liability and regulatory sanction considerations were not as great. The district court's finding that the employer's safety concerns were greater in the case of an intoxicated driver than in the cases presented by appellant is clearly supported by the record.

Appellant simply did not demonstrate that he was treated differently from black employees. As the evidence at trial showed, in the only instance where another employee was caught drinking on duty, the employee was fired. That employee was black. In the case of white former supervisor Gilliam, Mr. Gilliam testified only that he may have been intoxicated while on duty but emphasized that he would never consider drinking prior to duty driving a truck. Moreover, there is no indication that management was aware that Mr. Gilliam was intoxicated while on duty. The only similar incidents, involving individuals who drank on duty and were responsible for driving, concerned appellant and Mr. Isby, the black forklift operator. Both were fired. Mr. Davis and Mr. Butler testified that any driver found intoxicated while on duty, whether black or white, would be terminated.

Appellant's remaining arguments are equally without merit. Appellant attempted to show that the company's reasons for terminating him were a pretext for illegal discrimination. The trial court properly re-

fused to consider whether the company previously had authorized transportation of alcohol in company trucks. Such evidence has little relevance to proof of pretext where the employee is found drinking while on duty as a driver. The court also was correct in refusing to consider evidence that appellant's co-driver, Mr. Mathis, orchestrated events so appellant would be caught. The court properly refused to consider appellant's hearsay testimony that Mr. Mathis suggested that he purchase the whiskey to help him sleep. Moreover, such testimony would not be relevant to proof of the elements of a prima facie case of discrimination.

**V**

Appellee contends that this appeal is frivolous and prays that this Court "award to Appellee its reasonable costs in connection with this appeal." The joint appendix does not indicate any final determination by the district court of the issue of costs or assessment of attorney's fees.[1]

We proceed to discuss whether costs and attorney's fees should be assessed against appellant or his attorney for pursuing this appeal.

Under Rule 38 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1912, single or double costs may be assessed against an appellant who brings a frivolous appeal. *Martin v. Commissioner*, 756 F.2d 38 (6th Cir.1985); *See* Annotation, *Sanctions for Frivolous Appeals*, 67 A.L.R. Fed. 319, 323 (1984); Martineau, *Frivolous Appeals: The Uncertain Federal Response*, 1984 Duke L.J. 845.

Costs also may be assessed in appropriate cases in favor of the prevailing party against the attorney for the losing party who unreasonably and vexatiously multi-plies proceedings. 28 U.S.C. § 1927. Thus, in *Acevedo v. Immigration and Naturalization Service*, 538 F.2d 918, 921 (2d Cir.1976), (per curiam) costs were assessed against counsel personally pursuant to section 1927 because it was unlikely the petitioner would be able to satisfy the costs and, further, it was unlikely the petitioner was responsible for prosecuting the frivolous petition. Section 1927 originally did not allow awards of attorney's fees against counsel. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). It was amended, however, to allow such awards. *Glass v. Pfeffer*, 657 F.2d 252, 257 n. 4 (10th Cir.1981).

Courts have assessed attorney's fees against counsel personally under § 1927 for vexatiously and unreasonably multiplying proceedings. *See Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1292 (5th Cir. 1983), *on reconsideration*, 722 F.2d 209 (5th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984); *see also* Martineau, *supra*, 1984 Duke L.J. at 868–69. Courts also have assessed attorney's fees against counsel personally under inherent judicial authority where an attorney proceeds in bad faith. *See Durrett v. Jenkins Brickyard*, 678 F.2d 911, 918–19 (11th Cir.1982); *Glass v. Pfeffer*, 657 F.2d 252, 257–58 (10th Cir.1981). The courts have emphasized the need for findings on the record as well as notice and an opportunity to be heard. *E.g., Roadway Express, Inc. v. Piper*, 447 U.S. at 752, 100 S.Ct. at 2457; *Lewis*, 711 F.2d at 1292; *Durrett*, 678 F.2d at 919; *Glass v. Pfeffer*, 657 F.2d at 257–58.

■ The appeal in the present case clearly is frivolous. Appellant did not cite to this Court any evidence whatsoever in the record to support his claim of disparate treatment. The case should not have been

---

1. In his complaint, plaintiff-appellant prayed that he "be awarded Court costs and attorney fees under the Civil Rights Attorney Fees Act." The docket entries in the joint appendix show that plaintiff filed an oath to proceed *in forma pauperis* and that the district court entered an order that in light of the information set out in his pauper's oath, plaintiff was required to show cause or explain why he should not be required to pay $10.00 a month toward the costs of the case. Another docket entry shows receipt of $30.00 from plaintiff's attorney to cover court costs for three months pursuant to the order of the district court. A later docket entry accompanying plaintiff's notice of appeal notes the filing of an appeal bond. The notation is as follows: "(Chambers as surety + $70. Filing Fee)".

appealed. Appellant needlessly complicated a meritless case in a futile effort to reverse the judgment of the district court.

We conclude that the appellee is entitled to recover reasonable damages or costs against the appellant and perhaps against the attorney for appellant. The case is remanded to the district court for determination of the amount of damages or costs to be assessed in favor of appellee against either appellant or his attorney, or both; and for a determination of whether appellee is entitled to recover an attorney's fee against appellant or his attorney, or both, and, if so, in what amounts. For example, the district court will have an opportunity on remand to determine whether the appellant or his attorney was the moving party at various steps of the proceeding; whether the attorney recommended or urged the client to file and proceed with the appeal; or whether the client insisted that the appeal be filed and prosecuted, against the advice of his attorney.

Affirmed and remanded. The costs of this appeal are taxed against the appellant, Delmer Reynolds.