9 F.3d 107
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Beverly HARBISON and Robert Harbison, Plaintiffs-Appellees,
v.
INVESTORS TRADING COMPANY, a California Corporation; Harris
& Lasker Trading Company, a California
Corporation; Bob Harris; and Michael
Quenten Henry, Defendants-Appellants.
 No. 92-2236.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1993.
 
 Before: MILBURN, RYAN, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Plaintiffs filed an action seeking to recover for losses they sustained from certain investments they made in precious metals. The investments were arranged by the defendants, and the plaintiffs alleged that the defendants made fraudulent misrepresentations, committed securities-law violations, and breached their contracts with the plaintiffs. In the course of the litigation, the district court ordered the defendants' counsel, Richard Miller, to pay $500 to the plaintiffs as sanctions for Miller's failure to cooperate in preparation of the Joint Final Pretrial Order. The court ordered that Miller himself bear the cost of the sanctions. Miller appeals this award, asserting that the district court abused its discretion in awarding sanctions to the plaintiffs for his conduct.
 
 
 2
 * On March 5, 1991, the Harbisons filed an action in federal court seeking to recover for losses sustained when they invested in precious metals at the recommendation of and through arrangements made by the defendants. The district court initially set a trial date of February 18, 1992. Trial was later postponed to June 1, 1992, for which the court set a deadline of May 4, 1992, for the Joint Final Pretrial Order. Subsequently, trial was postponed a second time, and a pretrial conference was set for June 2, 1992.
 
 
 3
 In its order assessing the sanctions that are the subject of this appeal, the district court set out the facts in detail. Upon review of the record, we conclude that the district court's rendition of the facts is entirely accurate, and we quote from that order at length to establish the factual basis for the award of sanctions.
 
 
 4
 At the time of the June 2, 1992 pretrial conference held in the court's chambers, no joint final pretrial order existed due to defendants' counsel's failure to sign plaintiffs' proposed joint final pretrial order which had been submitted May 5, 1992. Accordingly, on June 4, 1992, the court entered an order that the parties were to file a joint final pretrial order signed by counsel for plaintiffs and by counsel for defendants on or before June 9, 1992.
 
 
 5
 On June 9, 1992, Mr. Miller submitted a "Pre-Trial Summary;" on June 11, 1992, he submitted another pretrial summary along with a pretrial statement; and on June 15, 1992, he submitted an amended pretrial summary. However, no joint final pretrial order was filed. Miller delivered a letter along with his June 11 pretrial summary. The letter stated that he had intended to edit the portion of the order entitled "Defendants' Claims," to look the order over, to point out any typographical errors, to recommend corrections, and to give plaintiffs' counsel permission to sign on his behalf. In his letter Mr. Miller also stated his concern that because he intended to appeal a previous order by this court which limited defendants' exhibits, it seemed "inappropriate" for him to sign the proposed order.
 
 
 6
 Plaintiffs then filed a motion for default judgment based in part on Mr. Miller's failure to cooperate in producing the joint final pre-trial order. [A hearing on this motion was scheduled for August 20, but was later postponed until September 4.]
 
 
 7
 At the September 4, 1992 hearing, still no joint final pretrial order had been signed by both parties counsel. In frustration over their arguing about who was to blame, the court ordered counsel for plaintiffs and counsel for defendants to go immediately to a conference room and reach a joint final pretrial order that was agreeable to both sides. The two attorneys, along with the court's law clerk, met for approximately five hours, finally reaching an agreement at about 2:00 p.m.
 
 
 8
 Plaintiffs' counsel returned to his office, prepared the proposed joint final pretrial order, signed it, and sent a copy to Mr. Miller for his signature. The court received an original proposed joint final pretrial order signed by plaintiffs' counsel on September 9, 1992. Because the order that the court received did not have Mr. Miller's signature, the deputy courtroom clerk, upon direction of this court, telephoned Mr. Miller's office at approximately 4:00 p.m. to inform him that he was to appear at the court "forthwith" to sign the joint final pretrial order. At approximately 4:30 p.m., a representative from Mr. Miller's office called the court, spoke with the court's law clerk, and informed her that Mr. Miller would not be signing the proposed joint final pretrial order. This representative was again told that the court had ordered that the pretrial order be signed by Mr. Miller "forthwith."
 
 
 9
 The court's law clerk telephoned Mr. Miller's office either the following day, September 10, or the morning of September 11, to ask when Mr. Miller was going to sign the pretrial order. The clerk was told that Mr. Miller would be filing something that day. On Friday, September 11, 1992, at 5:05 p.m., a time at which the court is not officially open for business, the deputy courtroom clerk received a hand-delivered letter from Mr. Miller along with a copy of the proposed joint final pretrial order, which Mr. Miller had signed with the qualifier "Approved as to form only."
 
 
 10
 Miller was called again and told that because of the qualifier, his signature was unacceptable. Miller insisted that he would not sign the order for the reasons stated in his letter.]
 
 
 11
 On September 23, 1992, the court issued [an] order to show cause [why a default judgment should not be entered due to Miller's failure to cooperate in submitting the joint final pretrial order]. Mr. Miller failed to appear for the show cause, having directed his associate, Darin Kanfer, to appear in his stead. Mr. Kanfer was unprepared to show cause. He stated only that Mr. Miller had said the refusal to sign the proposed joint final pretrial order was due to typographical errors in the proposed order. He further represented that he had not had a chance to read over the proposed joint final pretrial order, although he had seen it in the file. The court recessed for approximately 20 minutes to give Mr. Kanfer an opportunity to read the proposed joint final pretrial order so that he could articulate specific objections to it.
 
 
 12
 After the recess Mr. Kanfer stated that he objected to the wording in the section entitled "Defendants' Claims." The court was unable to determine precisely the reason for Mr. Miller's refusal to sign the order based on language that he himself had submitted. Through the court's questioning, however, it became apparent that Mr. Kanfer was not prepared to represent defendants in this action. Because of the court's concern that the defendants were not being properly represented by the associate Mr. Miller had sent in his place, it called an end to the hearing.
 
 
 13
 Even after calling his office, Mr. Kanfer was unable to tell the court why Mr. Miller failed to appear at the show cause. [The court's law clerk also called Miller's office and was told that Miller's whereabouts were unknown.]
 
 
 14
 The court finds that D. Richard Miller, in failing to appear for the show cause and by sending an unprepared associate to federal court to represent his clients, has violated the spirit and the letter of LR 16.2(c)[1 and Rules 16(f) and 37(b)(2) of the Federal Rules of Civil Procedure.
 
 
 15
 Order Assessing Attorney Fees at 1-6 (footnotes omitted). At the show cause hearing, the district judge expressed to Miller's associate, Mr. Kanfer, his view of Miller's behavior in this case: "I must say I've never experienced in thirty-some years of practice as a trial attorney this sort of a situation during my practice. It seems to me that we just have a situation in which defense counsel has made every attempt to impede and frustrate and thwart the progress of this litigation, and I'm just not going to tolerate it any longer." (J.A. at 60.)
 
 II
 
 16
 Although Miller asserts that there are nine questions for review in this appeal, we find only one: whether the $500 sanction imposed on Miller was unreasonable in light of his conduct. The district court's award of sanctions is reviewed for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401 (1990).
 
 
 17
 Miller's argument on appeal is that it was the Harbisons and not he who failed to cooperate in preparing the pretrial order and that now he has been called upon to bear the cost of his "good faith disagreement over the substantive issues covered in the proposed Joint Final Pretrial Order."
 
 
 18
 Our review of the record leads us to conclude that Miller's attempt to shift the blame to the Harbisons cannot be supported by the facts. The district court laid the primary blame on Miller in a soundly reasoned and factually supported decision. While it may in fact take two to have an argument, as Miller asserts, what was occurring here was not an argument. Miller was engaged in a blatant and unilateral refusal to comply with the Civil Rules and the lawful orders of the trial court. Because we agree entirely with the district court's assessment of Miller's conduct (as described above), we find no error at all in the award of sanctions, much less an abuse of discretion. Indeed, it would stretch the imagination to conceive of a rational appellate court that would say this district court acted arbitrarily, capriciously, irrationally, fancifully, or unreasonably in its award of sanctions. We therefore affirm the award.
 
 
 19
 We next consider plaintiffs' claim for attorneys fees for defending this appeal. Federal Rule of Appellate Procedure 38 provides in full, "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Title 28 U.S.C. Sec. 1912 provides a similar right: "Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." These two provisions have been held to permit an award of costs, double costs, and/or attorney's fees against either the party or the attorney or both. See Reynolds v. Humko Products, 756 F.2d 469 (6th Cir.1985) (citing cases that support the various awards noted).
 
 
 20
 The standard for what is a frivolous appeal has been variously described, but under any definition, this appeal fits the bill. Any reasonable attorney could have identified that under the abuse-of-discretion standard the award of $500 was so clearly within the district court's discretion that there was no chance of success on appeal. Filing this appeal was nothing more than a continuation of Miller's dilatory tactics, and this Court will not condone such actions.
 
 III
 
 21
 For the foregoing reasons, the order of the district court is AFFIRMED. It is further ordered that the Harbisons be awarded attorney's fees in the amount of $500 and double costs for defending this frivolous appeal. This award is to be assessed against Miller personally.
 
 
 
 [1]
 Local Rule 16.2(c) (E.D.Mich1992) provides:
 (c) Failure of Counsel or a Party Without Counsel to Cooperate. Failure of counsel or a party without counsel to cooperate in the preparation of, to submit, or to strictly comply with the terms of, the joint final pretrial order may result in dismissal of claims, default judgment, refusal to let witnesses testify or to admit exhibits, assessment of costs and expenses, including attorney fees, or other appropriate sanctions.