Thomas **CAMPBELL**, Plaintiff,

v.

**HAMILTON COUNTY, OHIO,**
et al., Defendants.

No. C–1–98–516.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 17, 1999.

Donald Bernard Hordes, Schwartz, Manes & Ruby, Cincinnati, OH, for Plaintiff.

John Joseph Arnold, Kathleen Mary Elfers, Hamilton County Prosecuting Atty's, Cincinnati, OH, Jeffrey Hartranft, Asst. Atty. General, General Workers' Compensation Section, Columbus, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on a Motion by Defendants Andrew H. Hitz and Timothy A. Shannon to Dismiss (doc. 17); a Motion by Defendant State of Ohio for Partial Judgment on the Pleadings (doc. 19); Memoranda in Opposition by Plaintiff Thomas Campbell (docs. 20 & 21); a Reply by Defendants Hitz and Shannon (doc. 22); a Reply by Defendant State of Ohio (doc. 23); a Motion by Defendant State of Ohio for Summary Judgment (doc. 25); a Motion by Defendant Hamilton County, Ohio, for Summary Judgment (doc. 26); Memoranda in Opposition by Plaintiff (docs. 28 & 29); a Reply by Defendant State of Ohio (doc. 31); a Reply by Defendant Hamilton County, Ohio (doc. 32); and Plaintiff's Memorandum of Law in Response to Defendant's Citation of a Recent Case (doc. 36).

The Court held a hearing in this matter on October 26, 1999.

## BACKGROUND

Plaintiff Thomas Campbell, a former probation enforcement officer for the Hamilton County Municipal Court, brings this action to allege that Defendants Andrew H. Hitz, Timothy A. Shannon, Hamilton County, Ohio, and the State of Ohio deprived him of his substantive due process rights,[1] violated his First Amendment rights, and unlawfully discriminated against him (docs. 1 & 10). Plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983. Defendants Hitz, Shannon, and Hamilton County deny Plaintiff's allegations (*see* docs. 3, 16 & 18), asserting that they acted properly in relation to Plaintiff's 1997 resignation from the Hamilton County Municipal Court Probation Department (hereinafter, the "Probation Department"). In addition, Defendant State of Ohio contends that the Eleventh Amendment bars Plaintiff's § 1983 claims against the State, and Defendant State of Ohio argues that the State generally cannot be held liable for

---

1. In Plaintiff's Memorandum in Opposition to the Motion by Defendants Hamilton County, Hitz, and Shannon for Summary Judgment (doc. 29), Plaintiff withdrew his procedural due process claim. Plaintiff wrote:

Inasmuch as the evidence developed during discovery indicates that Officer Campbell received in his pre-termination hearing the level of procedural due process which is required by the Fourteenth Amendment, *Cleveland Board of Education v. Loudermill,* 470 U.S. [532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)], Officer Campbell hereby withdraws Count 1 of his Complaint. (doc. 29 n. 3).

the employment decisions of a municipal court's probation department.

The following facts, except where noted, are not in dispute. The Hamilton County, Ohio, Municipal Court employed Plaintiff from 1995 until 1997 as a probation enforcement officer. Probation enforcement officers are unclassified civil service employees who are appointed to serve the judges of the Hamilton County Municipal Court "until further order of the Court" (County App., Ex. A–1, Walton Aff.). At all times relevant to this action, Defendant Hitz was the Chief Probation Officer with the Hamilton County Probation Department and Defendant Shannon was an Assistant Chief. In his Amended Complaint, Plaintiff sued Defendants Hitz and Shannon in both their personal and official capacities (doc. 10).

The incident underlying this action involves a conversation Plaintiff allegedly carried on in March of 1997 with a female probationer, Michelle Back, prior to her scheduled court appearance before Hamilton County Municipal Court Judge William J. Mallory, Jr. (hereinafter, "Judge Mallory"). According to Defendants, an internal investigation by the Probation Department resulted in the gathering of enough evidence to support the allegation that Plaintiff said to Ms. Back, "Whatever you do, don't dress up in court, Mallory strokes [2] pretty, white women" (County App., Ex. C–1, Shannon Aff.). Defendants aver that Plaintiff admitted during the investigation that he told Ms. Back that "Judge Mallory will stroke you", but Plaintiff denied that he inserted any racial or gender descriptions (Id., Ex. C–5, Campbell Interview).

Plaintiff, who is Caucasian, continues to deny that his comments involved any racial or gender descriptions; in fact, he contends that other probation enforcement officers actually commented about how Ms. Back should physically appear in court before Judge Mallory. In his deposition,

Plaintiff alleges that Probation Officer Wiley Ross, who is African–American, as well as Sheriff's Deputy Richard Morman and Probation Officer Jeffrey Seaman, who are Caucasian, took part in the alleged conversation with Ms. Back (Campbell Dep. at 46–50). During the Probation Department's own internal investigation into the incident, Deputy Morman testified that Officer Ross told Ms. Back that she should not "get too dressed up" (County App., Ex. C–8, Morman Interview). Officer Seaman, however, stated during his interview that he did not hear the conversation (Id., Ex. C–6, Seaman Interview).

The internal investigation of Plaintiff also focused on the testimony of Officer Ross and Ms. Back. Ms. Back, who precipitated the investigation by reporting the alleged statement to Probation Officer Robyn L. Bastin, signed an affidavit in which she attested that Plaintiff made the alleged statement. Officer Ross testified that, although he could not remember the exact wording of the comment, he "did remember [Plaintiff] saying something about Mallory strokes pretty white women" (Id., Ex. C–7, Ross Interview). According to Defendants, these statements appeared to contradict the taped testimony of Plaintiff and Deputy Morman. Further complicating the investigation was Defendant Shannon's understanding that Officer Seaman and Deputy Morman were "close personal friends" of Plaintiff, and that the relationship between Officer Ross and Plaintiff was, in contrast, acrimonious (see doc. 26; County App., Shannon Aff.).

Defendants aver that, because of the conflicting testimony and relationships within the Probation Department, Defendant Shannon decided to offer polygraph examinations to those principally involved in the investigation (Shannon Dep. at 74–77, 79). On April 18, 1997, both Plaintiff and Ms. Back voluntarily underwent polygraph examinations administered by Cin-

---

**2.** According to Defendant Shannon, the term " '[s]troke' is vernacular for sending someone to custody, confinement, either jail or prison, depending on the gravity of the offense." Shannon Dep. at 58.

cinnati Police Specialist Royce Winters. According to Officer Winters, "[t]here were significant physiological disturbances indicative of deception in [Plaintiff's] polygraph records (County App., Ex. C–11). On the other hand, Officer Winters found that '[t]here were no significant physiological disturbances indicative of deception in [Ms. Back's] polygraph records.'" (*Id.*, Ex. C–12). Plaintiff strongly disputes the findings of Officer Winters, asserting that the polygraph exams indicated (1) that Ms. Back lied about whether Plaintiff made the alleged statement and, conversely, (2) that Plaintiff told the truth about whether he made the alleged statement (*see* docs. 28 & 29; Winters Dep., Plaintiff's Ex. 19).

Nonetheless, during the pretest interview process for the polygraph exam, Ms. Back revealed that she had engaged in a sexual relationship with Officer Ross at some point prior to the polygraph exam (Shannon Dep. at 86). Despite this revelation, Officer Ross did not undergo a polygraph exam about the statement Plaintiff allegedly made regarding Judge Mallory. Plaintiff draws the Court's attention to Defendant Shannon's explanation as to why he did not require Officer Ross to undergo the exam.

> Quite frankly, my reticence with Mr. Ross struck to the fact that there was some fairly significant tension between the department and Mr. Ross at that point in time, arising from a previous disciplinary action involving Mr. Campbell. And Mr. Ross had made it relatively clear in questions—or not questions, but statements off the taped record, before and after the tape began running, that if this situation began to even look like retaliation by the department against him as a result of his complaints against Campbell, that we would be up to our eyeballs in litigation. So, it did not seem wise at that point to point a finger of suspicion at Mr. Ross unless and until I had a very pointed finger to use.

(Shannon Dep. at 80; *see also* Reed Dep. at 71).

The complaint against Plaintiff mentioned by Defendant Shannon in his deposition had been filed by Officer Ross in March of 1997. In his complaint, Officer Ross asserted that Plaintiff had painted the projectile portion of a .38 caliber bullet black and placed it on Officer Ross's desk. Officer Ross alleged that Plaintiff had said he looked like a bullet, and Officer Ross alleged that Plaintiff had also called him "Buckwheat" and "Skillet." As a result of Officer Ross's complaint, Plaintiff received a two-day suspension, a warning about the Municipal Court's "zero tolerance for violation of public or employee rights", and notice that a second violation within a year could result in suspension or termination of employment (*see* County App., Ex. C–2). Defendant Shannon testified that he did not want to further exacerbate the racial tension in the Probation Department by requiring Officer Ross to undergo a polygraph exam regarding Plaintiff and Plaintiff's alleged statement about Judge Mallory (Shannon Dep. at 96–97).

Plaintiff counters that racial tension was already a problem in the Probation Department. For instance, Plaintiff claims that Gary Boyle, an African–American probation enforcement officer who held a supervisory role, "received lesser discipline for making racially inflammatory remarks towards one of his subordinates, in the presence of others" (County App., Ex. D, Inter. No. 4). Apparently, Officer Boyle became embroiled in a racially-charged conversation with a Caucasian probation enforcement officer immediately following the verdict in the O.J. Simpson murder trial in October of 1995 (Hitz Dep. at 111–113). Defendants aver that both Officer Boyle and the other probation enforcement officer underwent counseling following the conversation (Walton Aff. ¶ 29). According to Defendant Hitz, "there was an agreement between the two parties involved that they both accepted some responsibility for the outbursts" (Hitz Dep. at 113). The record also indicates that Officer Boyle received a three-day suspension in January 1994 following allegations

of sexual harassment (*see* Shannon Dep. at 133 & Plaintiff's Ex. 1).

Despite the alleged tension in the Probation Department, after learning of a possible inappropriate sexual relationship between Ms. Back and Officer Ross, Defendant Shannon conducted an internal investigation and later reported his findings to Defendant Hitz. The Probation Department subsequently discharged Officer Ross because of the sexual relationship with Ms. Back. Defendants assert that they did not ask Officer Ross to undergo a polygraph exam about the relationship because they had documentary evidence, including hotel receipts, of the inappropriate sexual relationship (County App., Ex. B, Hitz Aff.).

Meanwhile, following the investigation of Plaintiff, Defendant Shannon recommended that Plaintiff should also be discharged due to the inappropriate nature of the statement Plaintiff allegedly made about Judge Mallory. Defendant Shannon states that he concluded that there was reasonable cause to believe Ms. Back and her version of the alleged statement despite her prior sexual relationship with Officer Ross (Shannon Dep. at 109). Thus, with the earlier complaint filed by Officer Ross against Plaintiff in mind, Defendant Shannon found that Plaintiff had violated Probation Department Standards prohibiting racial and gender discrimination for the second time within one year (*see* County App., Exs. B, B–2, & C).

Defendant Hitz concurred with Defendant Shannon's recommendation and presented a brief written summary of the events surrounding Plaintiff's alleged misconduct to the judges of the Hamilton County Municipal Court (*see id.,* Hitz Aff. & Walton Aff.). A majority of the judges signed an Entry directing that Plaintiff be discharged (*Id.,* Walton Aff., Ex. A–6). Thereafter, Michael L. Walton, Court Administrator for the Hamilton County Common Pleas Court, called Plaintiff into his office and informed him of the Judges' Entry (Walton Dep. at 42–43). Plaintiff's attorney, Donald B. Hordes, was available by telephone during the meeting with Mr. Walton. Pursuant to his standard practice, Mr. Walton offered Plaintiff the opportunity to submit a letter of resignation in lieu of termination (*Id.*). Plaintiff then resigned on or about April 22, 1997 (County App., Walton Aff., Ex. A–7). This lawsuit followed.

Plaintiff originally brought suit only against Defendants Hamilton County, Hitz and Shannon (doc. 1). Then, on May 10, 1999, Plaintiff filed an Amended Complaint naming the State of Ohio as an additional Defendant (doc. 10). According to Plaintiff, he learned during the course of discovery that Judge Mallory considered himself to be an employee of both Hamilton County and the State of Ohio (*see* doc. 6). In his Amended Complaint, Plaintiff asserts that the State of Ohio takes part in the administration of the Hamilton County Municipal Court and the Probation Department. Plaintiff also alleges that the Municipal Court, the Court Administrator, and Defendants Hitz and Shannon acted as agents of the State of Ohio in constructively terminating his employment.

In June of 1999, Defendants Hamilton County, Hitz and Shannon filed a motion to dismiss (doc. 17) and Defendant State of Ohio filed a motion for partial judgment on the pleadings (doc. 19). Thereafter, in September of 1999, Defendants filed motions for summary judgment (docs. 25 & 26). These motions reiterate many of the arguments raised in the earlier motions. Thus, Defendants Hamilton County, Hitz and Shannon now ask that the Court treat their motion to dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6) (*see* doc. 26). These motions are now ripe for the Court's determination.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

[T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *Mc-Donald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

To prevail on a claim brought under Title 42 U.S.C. § 1983, a plaintiff must prove (1) that the challenged conduct was committed by a person acting under the color of state law, and (2) that the challenged conduct "caused" a deprivation of the plaintiff's rights or privileges secured by the laws or Constitution of the United States. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *see also Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Here, Plaintiff alleges that Defendants acted under the color of state law to deprive him of the rights guaranteed by the First Amendment to the United States Constitution as well as Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*

In motions for summary judgment, Defendants maintain that Plaintiff cannot prevail on his claims as a matter of law. Defendant Hamilton County specifically contends that Plaintiff's § 1983 claim fails under the rule established in *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 694 (1978), because Plaintiff cannot identify a custom or policy that gave rise to his alleged injuries. Defendants Hitz and Shannon also assert that they are entitled to qualified immunity in relation to Plaintiff's personal claims against them. Furthermore, Defendant State of Ohio argues that (1) the Eleventh Amendment to the United States Constitution bars Plaintiff's § 1983 claim against the State of Ohio; and (2) Plaintiff cannot establish that the State of Ohio had any control over his employment with the Hamilton County Municipal Court, and, thus, the State cannot be held liable for any actions taken in relation to his employment.

In the following sections, the Court examines whether genuine issues of material fact preclude summary judgment in this matter.

## A. Plaintiff's Reverse Discrimination Claim

Plaintiff's reverse discrimination claim is based on his allegations that (1) the Probation Department recommended his termination despite testimony by a Caucasian probation enforcement officer that an African–American probation enforcement officer actually made the statement about Judge Mallory; and (2) another African–American probation enforcement officer received lesser discipline for making racially-inflammatory remarks immediately following the 1995 verdict in the O.J. Simpson murder trial. Plaintiff claims that these facts demonstrate that the Probation Department subjected him to disparate treatment because of his race. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (noting that disparate treatment cases involve allegations that "[t]he employer ... treats some people less favorably than others because of their race, color, religion, sex, or national origin").

As with all disparate treatment cases lacking direct evidence of discrimination, the Court must ensure that the following inferential analysis is satisfied: "(1) the plaintiff must establish a prima facie case of discrimination, (2) the employer must offer evidence of a legitimate, nondiscriminatory reason for its actions, and (3) the plaintiff must prove that the reason offered is in fact a pretext for intentional discrimination." *Kent Co. Sheriff's Ass'n v. County of Kent,* 826 F.2d 1485, 1492 (6th Cir.1987) (citing B. Schlei & P. Grossman, Employment Discrimination Law 1286–87 (2d ed.1983); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256–58, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ According to the Sixth Circuit, the first prong of this inferential analysis may be modified to establish a *prima facie* case of reverse discrimination. *See Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 801–802 (6th Cir.1994). In *Pierce,* the Sixth Circuit held that:

> [A] prima facie case of "reverse discrimination" is established upon a showing [1] that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," *Parker v. Baltimore and Ohio Railroad Co.,* 652 F.2d at 1017, *see also Daye v. Harris,* 655 F.2d 258 (D.C.Cir.1981); and upon a showing [2] that the employer treated differently employees who were similarly situated but not members of the protected class.

*Id.* at 801. The Sixth Circuit further explained in *Pierce* that employees may be considered "similarly-situated" for the purpose of creating an inference of disparate treatment if a plaintiff can "prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the ... employees who he alleges were treated more favorably." *Id.* at 802 (quoting *Ruth v. Children's Med. Ctr.,* No. 90–4069, 1991 WL 151158, at *6 (6th Cir. Aug.8, 1991)).

■ In this case, Defendants contend that Plaintiff's proof is insufficient to establish a *prima facie* case of disparate treatment. Specifically, Defendants argue that Plaintiff fails to present comparative evidence showing that the Probation Department's treatment of Plaintiff differs from that given to "similarly situated" African–American employees. For instance, Defendant notes that Officer Ross, the African–American probation enforcement officer whom Plaintiff accuses of actually making the statement about Judge Mallory, was discharged when the Probation Department discovered that he had carried on a sexual relationship with a probationer. In addition, Defendants aver that Officer Boyle, whom Plaintiff accuses of making a racially-inflammatory comment after the announcement of the verdict in the O.J. Simpson trial, received discipline in the form of counseling after he made the alleged comment.

Furthermore, Defendants point out that, in contrast to Officer Boyle, Plaintiff's alleged statement about Judge Mallory actually amounted to Plaintiff's second violation within one year of departmental policy. Such a second offense can result in suspension or termination, as the Probation Department had already warned Plaintiff after he received a two-day suspension for allegedly placing a painted bullet on Officer Ross's desk. In addition, Defendants assert that Plaintiff's alleged statement was disrespectful to a sitting judge, and they argue that such a comment can have a serious effect on the relationship between the Probation Department, the Municipal Court, and the probationers. Therefore, Defendants contend, even if Plaintiff can show a similar situation among his coworkers, legitimate, nondiscriminatory reasons existed to support their recommendation to terminate Plaintiff's employment.

In response, Plaintiff asserts that "background racial tension set the scene for discrimination against Caucasian probation officers" (doc. 28) Plaintiff insists that Officer Boyle was not formally disciplined in 1995 for his racially-inflammatory comment even though the departmental policy manual called for at least a written reprimand. In addition, Plaintiff alleges that, during the investigation into the statement allegedly made by Plaintiff, Defendant Shannon ignored the fact that a Caucasian officer, Deputy Morman, supported Plaintiff's version of events. Plaintiff also asserts that Ms. Back was caught in a lie about the alleged statement when she underwent her polygraph exam while Plaintiff's exam indicated that he was being truthful. Plaintiff further notes that Officer Ross was not subjected to a polygraph exam at all. In sum, Plaintiff argues that Defendants Hitz and Shannon "conducted a very skewed investigation in pursuit of political correctness" and that their final recommendation to the Municipal Court "was custom-tailored to omit key facts" such as Deputy Morman's testimony (doc. 28).

After reviewing Plaintiff's reverse discrimination claims and the evidence he offers in support of these claims, the Court concludes that Plaintiff fails to establish a *prima facie* case of discrimination. In reaching this conclusion, the Court finds in particular that Plaintiff fails to produce comparable evidence showing that the Probation Department treated him less favorably because of his race. *See, e.g., Shah v. General Elec. Co.*, 816 F.2d 264, 268 (6th Cir.1987) (holding that the plaintiff could not establish a *prima facie* case without evidence to show his coworkers had similar work records and evaluations); *Reynolds v. Humko Products*, 756 F.2d 469, 472 (6th Cir.1985) (upholding the district court's finding that the plaintiff failed to establish that other employees who "had committed offenses of the same magnitude" were subjected to lesser discipline).

The record in this case indicates that the Probation Department investigated possible violations of departmental policy regardless of whether the violations involved Caucasians or African–Americans. In fact, the Probation Department terminated Officer Ross's employment after it found Officer Ross had violated departmental policy. Moreover, the Court declines to second-guess the impressions of Defendant Shannon gathered during his internal investigation of Plaintiff. Defendant Shannon indicates that he kept in mind that Plaintiff and his main supporter, Deputy Morman, were friends, and that Plaintiff and Officer Ross were not. The fact that Defendant Shannon found Ms. Back to be the more credible witness during his investigation into the alleged statement about Judge Mallory fails to establish a *prima facie* case of reverse discrimination in this case. In addition, Defendant Shannon's efforts to reduce the disruptive nature of the investigation into the alleged statement are not enough to support Plaintiff's argument that the Probation Department is "'that unusual employer who discriminates against the majority.'" *Pierce*, 40 F.3d at 801 (quoting *Parker*, 652 F.2d at 1017).

In the case of Officer Boyle, the Probation Department decided that the best way of addressing Officer Boyle's disagreement with a fellow probation enforcement officer about the verdict in a polarizing and public trial was to bring the coworkers in for counseling. The Probation Department may have found this to be adequate discipline given the context of the disagreement. Unlike the statement allegedly made by Plaintiff to a probationer about a judge she was about to go before regarding a probation violation, Officer Boyle's alleged outburst was directed at a coworker. In addition, Defendant Hitz testified that Officer Boyle and his fellow probation enforcement officer accepted responsibility for the argument. The Court further notes that, in January 1994, the Probation Department disciplined Officer Boyle with a three-day suspension for charges of sexual harassment. All in all, the Court finds that the Probation Department's disciplinary actions related to Officer Boyle are not indicative of reverse discrimination.

■ Even assuming Plaintiff could succeed in establishing a *prima facie* case of reverse discrimination, Plaintiff fails to show that Defendants' stated reason for recommending his termination was a pretext for intentional discrimination rather than a legitimate, nondiscriminatory reason. Defendants argue that they could not condone the alleged statement Plaintiff made to a probationer about Judge Mallory. The Court agrees with Defendants that the alleged statement by Plaintiff carried a greater risk of harming the public task assigned to the Probation Department than Officer Boyle's rash comment made to a coworker following the O.J. Simpson trial. Moreover, the alleged statement by Plaintiff came on the heels of the suspension Plaintiff received after the investigation of Officer Ross's complaint.

Therefore, the Court finds that Defendants are entitled to summary judgment with regard to Plaintiff's Title VII claim.

**B. Plaintiff's First Amendment Claim**

Although Plaintiff denies that his statement about Judge Mallory carried any racially– or gender-biased overtones, Plaintiff asserts that, even if he in fact said, "Whatever you do, don't dress up in court, Mallory strokes pretty, white women", Defendants violated his constitutionally-protected right of free speech by recommending his termination on the grounds that his statement disparaged Judge Mallory. This right of free speech invoked by Plaintiff is protected by the First Amendment to the United States Constitution.

■ There is no question that public employees, like private employees, cannot be discharged on grounds that infringe upon their constitutionally-protected right of free speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). Nonetheless, in First Amendment law, "the government as employer indeed has far broader powers than does the government as sovereign." *Waters v. Churchill,* 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). The inquiry into whether a government stepped beyond its powers in relation to an employee's First Amendment rights requires a balancing " 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Rankin,* 483 U.S. at 384, 107 S.Ct. 2891 (quoting *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

■ Accordingly, the speech of a public employee is protected if (1) the speech addresses a matter of public concern; and (2) the employer lacks an overriding state interest in efficient public service that would be undermined by the speech. *See Waters,* 511 U.S. at 668, 114 S.Ct. 1878; *Rankin,* 483 U.S. at 384–85, 107 S.Ct.

2891. Whether a public employee's claim meets this test is a question of law. *Rankin*, 483 U.S. at 386, 107 S.Ct. 2891; *Meyers v. City of Cincinnati*, 934 F.2d 726, 729 (6th Cir.1991). Furthermore, this test is applied to what the government employer reasonably thought was said. *Waters*, 511 U.S. at 676–77, 114 S.Ct. 1878. While a degree of deference may be given to an employer's decisionmaking concerning the alleged statements of an employee, the employer must act in good faith. *Id.* at 677, 114 S.Ct. 1878.

To determine whether the employee's speech addressed a matter of public concern, the Supreme Court considers "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Likewise, the Sixth Circuit focuses on the intent or content of the conversation. *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1187 (6th Cir.1995) (citing *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985)). In *Dambrot*, the Sixth Circuit found that "the linchpin of the inquiry is, thus, ..., the extent to which the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives." *Id.*, 55 F.3d at 1189.

■ If the speech is found to focus on a matter of public concern, then the speech will be protected unless the government's interest in public service outweighs the importance of the right to speak in the individual case. *Linhart*, 771 F.2d at 1009. Outweighing concerns may include a need for efficiency, discipline, and loyalty. *Id.; see also Waters*, 511 U.S. at 673, 114 S.Ct. 1878 (finding that "substantial weight [may be given] to the government employers' reasonable predictions of disruption"). In *Meyers*, the Sixth Circuit found that:

> In order to justify a restriction on speech of public concern by a public employee, plaintiff's speech must impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or

mission of the employer, impede the performance of the speaker's duties, or impair harmony among co-workers. The state bears the burden of showing a legitimate justification for discipline.

*Id.*, 934 F.2d at 730; *see also Rankin*, 483 U.S. at 388, 107 S.Ct. 2891 (finding that the state interest element "focuses on the effective functioning of the public employer's enterprise").

■ In the instant matter, Defendants argue that Plaintiff's speech did not address a matter of public concern because Plaintiff actually intended the comment to be advice for Ms. Back on matters relating to her pending probation violation hearing. Plaintiff spoke with Ms. Back in his cubicle office, and Plaintiff admits that he warned Ms. Back not to take Judge Mallory lightly (Plaintiff Dep. at 37, 49). Defendants assert that the content, form, and context of the alleged statements by Plaintiff indicate that he did not intend to speak on a matter of public concern. As support, Defendants point to cases such as *McMurphy v. City of Flushing*, 802 F.2d 191, 197–98 (6th Cir.1986), in which the Sixth Circuit found that insubordinate remarks or office-policy debates by public employees were not matters of public concern. *See also Langford v. Lane*, 921 F.2d 677, 682 (6th Cir.1991); *Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir.1989). In addition, Defendants draw the Court's attention to *Buckley v. City of Portage*, No. 98–1783, 1999 WL 777542, at *3–*4 (6th Cir. Sept.16, 1999), in which the Sixth Circuit declined to find a matter of public concern in articles published by a police officer. The court in *Buckley* found that the articles focused primarily on internal policy matters, such as lack of overtime pay for officers on patrol, improper hiring practices, and mishandling of evidence and not on the effect that these matters might have on the public. *Id.*

Defendants also contend that, even assuming the alleged statement could be considered one of public concern, Defendants had an overriding interest in promoting

the efficiency of the Probation Department when they sought to discipline Plaintiff for the alleged statement. Defendants argue that Plaintiff's speech was disruptive and tended to interfere with working relationships. Defendants aver that the alleged statement about Judge Mallory expressed a disrespect for the judges, degraded the relationship between the Probation Department and the Municipal Court, and undermined the confidence the judges had in the probation enforcement officers. Defendants ask the Court to take into account the reactions of Defendants Hitz and Shannon as well as Judge Mallory, all of whom averred that they considered the alleged statement to be inappropriate. Judge Mallory, for instance, testified that the alleged statement made to a probationer before she came into his courtroom "interfere[d] with my effectiveness"[3] (see Mallory Dep. at 74–76).

In contrast, Plaintiff asserts that the alleged statement, if made, did address a matter of public concern. Plaintiff contends that the alleged statement addressed the issue of whether a municipal court judge discriminated against probationers on the basis of their race or gender, and Plaintiff maintains that this is the message Plaintiff sought to convey if indeed he actually uttered the alleged statement to Ms. Back. Plaintiff distinguishes the cases relied upon by Defendants by insisting that Plaintiff's speech "referred exclusively to a matter of public concern, the ideological leanings of a sitting municipal court judge" (doc. 36), and not on a matter of workplace concern. Plaintiff also urges the Court to follow the legal precedent discussed by Sixth Circuit Judge Nathaniel R. Jones in his *Buckley* dissent. In his dissent, Judge Jones argued that law would protect a public employee's speech even if only part of the speech related to a public concern and even if the speech was offensive. *Id.*, No. 98–1783, 1999 WL 777542, at *6, *9.

Furthermore, Plaintiff contends that Defendants fail to show that their interest in running an efficient Probation Department outweighed Plaintiff's right to engage in free speech. Plaintiff asserts that Defendants' "self-serving, conclusory statements" are insufficient to establish that the alleged statement by Plaintiff harmed either the Probation Department or Judge Mallory (doc. 29). Plaintiff also argues that Defendants Hitz and Shannon based their recommendations on "extremely weak" evidence, including hearsay, and Plaintiff asserts that this violates the rule in *Waters* requiring reasonable investigatory procedures. *Id.*, 511 U.S. at 677–78, 114 S.Ct. 1878. In addition, Plaintiff notes that, according to *Meyers*, "[t]he motivation behind the [employer's] disciplinary action is a question of fact". *Id.*, 934 F.2d at 729. From this, Plaintiff asserts that a question of fact exists as to whether the Probation Department recommended his termination because it was "an expedient way to quiet racial tensions in the Probation Department" (doc. 29).

Nevertheless, after reviewing this matter, the Court agrees with Defendants that Plaintiff's First Amendment claim must fail as a matter of law. First, given the content, form, and context of the alleged statement, Plaintiff fails to convince this Court that he intended to speak on a matter of public concern by bringing a "wrongdoing to light". *Linhart*, 771 F.2d at 1010. Unlike the female police officer in *Matulin v. Village of Lodi*, 862 F.2d 609, 612–13 (6th Cir.1988), who spoke to a newspaper reporter about gender discrimination in her department, Plaintiff offered inside advice to a probationer just prior to her appearance before a judge. Considering the substance of the alleged statement as Defendants found it to be following their investigation, the Court agrees that Plaintiff did not seek to convey a sincere public message about possible discrimination on the part of a municipal court judge. The Court further finds that, based on the content, form, and context of Plaintiff's alleged statement of advice to a probation-

---

**3.** Judge Mallory recused himself from Ms. Back's criminal case (Mallory Dep. at 44–45).

er, the statement could not even pass muster as a matter of public concern under Judge Jones's analysis in *Buckley.*

Secondly, even if the Court were to find that Plaintiff sincerely meant to address a matter of public concern, Defendants present legitimate interests outweighing Plaintiff's interest in free speech. Specifically, the Court finds that a probation enforcement officer's loyalty to the judges he or she serves is a legitimate and paramount concern for a probation department and a court system. In *Jefferson v. Ambroz,* 90 F.3d 1291, 1297 (7th Cir.1996), the Seventh Circuit concluded that:

> Loyalty and confidence are critical to a probation officer's position. . . .
>
> . . . .
>
> . . . a probation officer is the most important contact between the court system and the probationers. The biggest responsibility of a probation officer is to ensure that probationers comply with the orders of the court. That ability is necessarily injured when probationers believe that their probation officer lacks confidence in the system. . . .

*Id.* (affirming the dismissal of the plaintiff's First Amendment claim); *see also Klunk v. County of St. Joseph,* 170 F.3d 772, 776 (7th Cir.1999). In the case before this Court, Defendants concluded after their internal investigation that Plaintiff's statement to a probationer who was about to come before a judge regarding her probation violation was inappropriate. The Court agrees with Defendants that the statement they believed Plaintiff uttered could, at a minimum, undermine a probation department's goal of encouraging probationers to believe in a fair judicial system and comply with the rules of their probation.

Finally, the Court disagrees with Plaintiff that a question of fact remains as to the motivation of Defendants in recommending Plaintiff's termination. Like the court in *Meyers,* we find that the record in this case "leaves no room for reasonable minds to differ." *Id.,* 934 F.2d at 729. Plaintiff suggests that the termination

could have been "an expedient way to quiet racial tensions" in the Probation Department (doc. 29), but the racial tensions to which Plaintiff refers in this case center around the 1997 complaint filed by Officer Ross against Plaintiff and Officer Boyle's reaction to the 1995 O.J. Simpson verdict. These isolated incidents are not enough for a reasonable trier of fact to find that Plaintiff was, in essence, a scapegoat. In addition, the fact that Defendant Shannon decided to rely on the word of Ms. Back in making his final recommendation is not unreasonable given the conflicting testimony and relationships within the Probation Department at the time. The record, therefore, indicates that Defendants recommended the termination of Plaintiff due to a statement they viewed as inappropriate for a probation enforcement officer.

Having concluded that no genuine issues of material fact exist as to the merits of this case, the Court finds that we need not address Defendants' arguments concerning immunity under § 1983 or the responsibility of the State of Ohio with relation to employment decisions made by municipal courts or the probation departments that serve the municipal courts.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS summary judgment in favor of Defendants and DISMISSES Plaintiff's action.

SO ORDERED.